No. 15,200.

CRAFTSMAN PAINTERS AND DECORATORS, INC. ET AL. *v.*
CARPENTER, DIRECTOR OF REVENUE.
(137 P. [2d] 414)

Decided December 28, 1942.   Rehearing denied May 3, 1943.

1

2

Mr. Elmer P. Cogburn, Mr. Arthur Cassidy, for plaintiffs in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. George K. Thomas, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear in the same order as in the trial court and are hereinafter referred to as there.

This is an action for a declaratory judgment to test the legality of certain sales tax regulations promulgated by defendant and, if illegal, to enjoin enforcement thereof as to plaintiffs. Trial was to the court and to review its judgment sustaining the regulations plaintiffs prosecute this writ. The fourth assignment is—

"The trial court erred in finding and adjudging plaintiffs to be the consumers and users of building materials which they purchase and affix to or build into buildings, dwellings, etc." Defendant, stating it in slightly different language, says the only question involved is, Are plaintiffs such users and consumers? We think the answer is, yes, and are satisfied that answer disposes of every material issue in the cause.

The personal property involved consists of paints and oils, finishes, and other incidental materials used by painting contractors; and all wire lighting fixtures, and incidental materials used by electrical contractors. Plaintiffs take painting and electrical contracts at a fixed price for the completed job and buy and use the materials in question as an integral part thereof.

Our sales tax statute was enacted in 1935 and is chapter 144, '35 C.S.A. We quote the following from section 2 thereof.

"(d) The term 'wholesaler' means a person doing a regularly organized wholesale or jobbing business and known to the trade as such and selling to retail merchants, jobbers, dealers or other wholesalers, for the purpose of resale.

"(e) The term 'wholesale sale' means a sale by wholesalers to retail merchants, jobbers, dealers or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale; and the sales shall be deemed a retail sales and subject to the provisions of articles 1 to 5 of this chapter.

"(f) The term 'retailer' or 'vendor' means a person doing a retail business, known to the trade and public as such, and selling to the user or consumer, and not for resale.

"(g) 'Retail sale' includes all sales made within the state except wholesale sales."

Section 5 makes every retailer liable for the tax, and section 6 requires him to add it to the price charged. Section 7 makes it the duty of the state treasurer to

make and promulgate regulations to effectuate the legislation, and sections 32 and 45 extend that authority to the prescribing of necessary forms and the general administration of the act.

In 1936 this chapter was broadened in its application by a supplemental act imposing a "use tax" in certain cases where the former was not applicable. 2nd Extra Session 1936, p. 86, c. 11. In the following year the sales tax and use tax chapters were combined and reenacted as a single statute, but no change was made in the sections above quoted. S.L. '37, c. 230. In 1941 sales and use tax funds were made payable into the "Department of Revenue Administration Fund." S.L. '41, p. 628, c. 187.

By the Administration Code, chapter 2, S.L. '41, the Department of Taxation and Revenue was created, and the administration of the sales and use tax statutes was vested in the Department of Revenue (§32, id.) under the control of the Director of Revenue (§33, id.). By the foregoing, plus the provisions of section 3, all power and authority over the administration of sales and use tax statutes and the collection of such taxes, formerly vested in the state treasurer or other officer, passed to the director of revenue.

Regulation 17 of date September 22, 1939, which was the last published regulation on the subject by the state treasurer, designated such contractors as plaintiffs as retailers, provided that they should obtain a sales tax license, and that sales to them might be made without collecting the tax thereon.

Under date of January 3, 1942 (effective February 1, 1942), defendant issued to "field and office collectors and others concerned" his regulation 17, the validity whereof is the subject of this litigation, repealing regulation 17 as published September 22, 1939, by the state treasurer (except as to contracts entered into in reliance upon the repealed regulation) which new regulation defined the status of plaintiffs and others

similarly situated as "contractors" and held them liable as "purchasers at retail," and, where their purchases were made outside the state of Colorado and "built into" any structure which they were erecting, liable for the use tax.

Because it is contended that the question of plaintiffs' status as wholesalers or retailers was eliminated from the action, the fact that the trial court passed upon it is vigorously contested. It is a sufficient answer thereto to say that notwithstanding that elimination the trial judge could not be precluded from considering the provisions of the statute on that subject if he deemed such consideration essential to a comprehensible determination and statement of the question at issue.

It seems to us too clear to require detailed analysis that the question presented to the director of revenue was one which came within his jurisdiction and that he was vested with full authority to change regulation 17 as published by the state treasurer to meet the requirements of the law as his predecessor should have done. The only prohibition thereon being that in so doing he should violate no plain provision of the statute.

The problem presented to the director of revenue briefly stated was, Were plaintiffs the ultimate users and consumers of the materials built into their jobs and furnished the owner as an entirety, or were they retailers to those owners of each particular item of personal property so built in? Stated otherwise, Were they selling to the owner the completed job, or were they selling him separately each pint of paint and each piece of wire used in the job?

We think his conclusion that when they purchased the several items of personal property and built them into the structure as an integral part of their entire contract, and then disposed of the completed work to the owner, they were users and consumers and not retailers to the owner of each item, was not only a ruling

within his discretion, but is absolutely irrefutable on any basis of logical reasoning, and that authority to support it is no more essential than is authority to support the conclusion that black is not white, or that two plus two equals four.

It is equally clear that if the question were ever properly the subject of regulation by the administrator of the act in the particular here involved that regulation was also subject to amendment or repeal in like manner, provided only, the rights of those who had contracted under the original be preserved, and that was done here.

However, numerous authorities are cited to support the opposing positions taken by plaintiffs and defendant. The latter relies, inter alia, upon the following: *Commonwealth v. Gormly,* 173 Penn. St. 586, 34 Atl. 282; *Utah Concrete Products Corp. v. State Tax Com.* 101 Utah 513, 125 P. (2d) 408; *Herlihy Mid-Continent Co. v. Nudelman,* 367 Ill. 600, 12 N. E. (2d) 638. With the reasons and conclusions of the foregoing we agree. That support can be found in a few instances for a contrary interpretation can not be disputed. Were it otherwise the cause would probably not be before us. However, considering our view of the question, as above set forth, we do not feel called upon now to dissect and criticise these opposing authorities. We simply do not agree with them. Nevertheless of one decision relied upon by plaintiffs we must take note because it is our own, i. e., *Fifteenth Street Inv. Co. v. People,* 102 Colo. 571, 81 P. (2d) 764. First, let it be borne in mind that we there observed, as here, a lack of unanimity in the adjudicated cases. There also each litigant cited and relied upon those in his favor. The tax there in question was a use tax while the authorities cited dealt principally with sales taxes. We said, "We find none of these cases dealing with the exact situation or statute here under consideration." For the same reason we do not consider this Fifteenth Street Company case on use tax control-

ling on the sales tax question before us. For instance, if in incorporating the personal property here involved into realty constitutes a sale of the various items by the contractor to the owner of the realty then in the Fifteenth Street Company case the incorporating of the elevators involved (actually purchased in Missouri) into the Colorado realty was a sale to the owners of the realty, those owners would have been liable to a sales tax, not to a use tax as we held there.

It cannot be denied that for purposes of illustration we there used some language which, detached from its setting and applied in a different case under dissimilar facts to the solution of a different problem, would appear inconsistent with our conclusion here. We accordingly devote no space to further differentiation or reconciliation though both seem to us practicable. It is pertinent however to observe that on the same day the decision in the Fifteenth Street Company case was handed down we specifically held that "The ultimate consumer of all articles purchased and used by a manufacturer in its manufacturing operations is the manufacturer." *Bedford v. C. F. & I. Corp.*, 102 Colo. 538, 81 P. (2d) 752. This, of course, we there qualified as to certain exceptions not here involved. The Fifteenth Street case is authority for our holding here that plaintiffs must pay the use tax on such items covered as they purchase outside the state and use in fulfilling their contracts in the same manner as those purchased in Colorado are used as above noted; this also for the reasons heretofore given.

The judgment is affirmed.

Mr. Justice Hilliard dissents.