No. 15,188.

CARPENTER, DIRECTOR OF REVENUE *v.* CARMAN DISTRIBUTING COMPANY.

(144 P. [2d] 770)

Decided December 20, 1943.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. GEORGE K. THOMAS, Assistant, for plaintiff in error.

Mr. William F. McGlone, for defendant in error.

Messrs. Grant, Shafroth & Toll, amicus curiae.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

Defendant in error, hereinafter referred to as the company, brought this action against the Director of Revenue, plaintiff in error here, under the Uniform Declaratory Judgments Act, seeking an adjudication that certain sales of tangible personal property made by it to laundries and dry cleaners were not subject to the retail sales tax (chapter 230, S.L. '37; chapter 144, C.S.A. Supp. '39, et seq.). The trial court, in accord with the contentions of the company, held the involved sales nontaxable and the Director of Revenue here seeks a review of that decision. Amicus curiae are aligned on the side of the company. Once previously the proceeding was considered by us on questions of pleading as *Armstrong v. Carman Co.*, 108 Colo. 223, 115 P. (2d) 386.

The company is in the business of selling three classes of articles to laundries and cleaners, viz.: (1) soaps, starches, alkalies, solvents, etc.; (2) cloths, fabrics, buttons, threads, etc.; and (3) wrapping paper, bags, twine, ink, labels, hangers, etc.

The laundries and cleaners carry on the business of cleaning, ironing or pressing and repairing the garments and goods of their customers. For this service they impose a charge against their customers and collect a service tax thereon under the Public Revenue Service Tax Act (chapter 158 S.L. '39, chapter 148A, C.S.A. Supp. '39, et seq.).

As a sequential circumstance we mention at this point, as later herein will be elaborated, that in Colorado as the foregoing citations indicate, the so-called sales and service taxes are imposed by distinct and separate legis-

lative enactments. Eighty-five per cent of the proceeds of the sales taxes are allocated constitutionally to the Old Age Pension Fund, and by statute receipts from the service tax go to the state general fund.

The articles enumerated in classification (1) are used by the laundries and cleaners in washing, cleaning and finishing the apparel and goods of their customers. The solvents and soaps in this category are purchased from the company and mixed with water or other fluids by the laundries and cleaners in accordance with their individual formulae to form the cleaning agents employed in the service rendered by them. The other items, such as starch, etc., are used in finishing the laundered or cleaned article. All items in this group are physically exhausted in the laundering and cleaning operation. The items included in classification (2), cloths, threads, buttons, etc., are used by the laundries and cleaners in repairing the articles serviced by them for their customers. In certain classifications of service the laundries customarily repair apparel without making a separate or itemized charge for such repairs, but the cost to customers for such classes of service is the same whether repairs are made or not. The cleaners perform minor repairs without making an additional and itemized charge to their customers. The items embraced in classification (3) are used to wrap and package the articles laundered or cleaned for return to the customers and no separate charge is made for the paper, twine, etc., so employed. The cost to the laundries and cleaners of the materials enumerated in the foregoing three categories average between 8.42 and 10 per cent of their entire overhead expense.

This controversy was precipitated by the promulgation of Special Ruling 165, Colorado Sales Tax, by the Director of Revenue on June 1, 1939, which, contrary to the previous administrative practice, brought the sales herein involved into a status of taxability.

The company first contends that, notwithstanding

such rule, all items of all three classifications are exempt from taxation under the Sales Tax Act, supra, by virtue of section 2(n), which is as follows: "Sales to and purchases of tangible personal property by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity, which tangible personal property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished and the container, label, or the furnished shipping case thereof, shall be deemed to be wholesale sales and shall be exempt from taxation under articles 1 to 5 of this chapter."

Counsel for the company concedes that the laundries and cleaners are not manufacturers and consistently, by the elimination of references to the manufacturing business in section 2(n) supra, says that as applicable in the case at bar such subsection may be considered as providing: "Sales to and purchases of tangible personal property by a person engaged in the business of * * * compounding for * * * profit or use, any article, substance or commodity, which tangible personal property enters into the processing of or becomes an ingredient or component part of the * * * service which is * * * compounded or furnished and the container, label or the furnished shipping case thereof, shall be deemed wholesale sales * * *."

It is argued for the company that the evidence brings the sales under examination within the contingency of the exemption, since, as the district court found, all the items of personal property here involved either enter into the processing of, or become an ingredient or component part of, the service the laundries and cleaners furnish their customers. It is to be observed that this conclusion is based upon the premise that the word "service" appearing in section 2(n), supra, is inclusive of *all services* furnished wherein tangible personal property enters into the processing or becomes an ingredient

or component part thereof. For the Director of Revenue, the Attorney General asserts that as used in section 2 (n) the term "service" is limited to *services taxable under the Sales Tax Act* and thus does not include the services rendered by the laundries and cleaners. If this contention of the Attorney General is sound, as we conclude it is for the reasons we shall give, it is obvious that the holding of the trial court on this particular issue must be invalidated, irrespective of a determination of the debated question of fact as to whether the items sold and purchased enter into the processing of or become an ingredient or component part of the services furnished by the laundries and cleaners.

The Sales Tax Act "was fundamentally intended to impose a tax upon that which is consumed and used and exempts only that which is sold for resale." *Bedford v. C.F. & I. Corp.*, 102 Colo. 538, 543, 81 P. (2d) 752. In the opinion in that case we further said: "The ultimate consumer of all articles purchased and used by a manufacturer in its manufacturing operations is the manufacturer and upon the basis of the definitions alone the manufacturer would be liable for the tax on all of such items. It is definitely evident, however, that the legislature had well in mind that in the ordinary course of our complex industrial and commercial systems many articles and commodities are used and consumed by processors and manufacturers for later resale in an altered form. In the event an intermediate sales tax was charged upon the intervening transactions and upon each of the articles involved, consecutive taxes would be pyramided upon the final product offered for resale to the ultimate consumer. The extent to which there should be relief from this condition, certain of occurrence, and the limitations which should apply with respect thereto, were purely matters of legislative discretion. The legislative declaration to meet this situation is contained in section 2 (n) supra." The Colorado Fuel & Iron Corporation case was concerned with the

business of manufacturing. The language of the opinion was so chiefly directed thereto, but clearly its pronouncements have equal application to the business "of compounding for sale, profit or use," in which the company asserts the laundries and cleaners are engaged. Accordingly it would appear that the exemption from taxation by section 2(n), supra, of the intermediate sales of items incorporated in a product finally sold in finished form at retail, not only was promulgated to avoid a pyramiding of sales taxes into the cost of the finished product, but also contemplated that a sales tax should be collected on the end transaction and that such should be the measure of the total imposition on the composited product.

In the case at bar the consummation of the end transaction, which is the delivery of the serviced articles to their customers by the laundries and cleaners, no sales tax is paid by or collected from such customers. Thus, if it were accepted, as the company contends, that the sales of tangible personal property purchased from it by the laundries and cleaners, are exempt under section 2(n), supra, and, as is admitted, no sales tax is or can be imposed under the act on the final sale of the service in the furnishing of which such personal property is used, the consequence would be that no sales tax whatsoever would be received by the state on *either* or *any* of the *final* or *intermediate* sales.

Noticing the rationale of the enactment as well as its primary purpose of taxing retail sales, it is difficult to conceive that the legislature intended that result. Notwithstanding these considerations, counsel for the company, upon the premise that the words of a statute must be given their ordinary meaning and scope, argues that the use of the terms "service * * * furnished" in section 2(n) supra, compels the construction the company asserts. Although the limitation is not expressly incorporated in section 2(n) supra, we are convinced that the Sales Tax Act, considered in its entirety, specifies with

precise certainty the circumscription on the scope of the words in question and that the services rendered by the laundries and cleaners are not within the category covered thereby.

In addition to laying a tax upon sales and purchases of tangible personal property at retail, the sales tax statute, section 4(b) levies a sales tax equivalent to two per cent of the amount paid: "(1) For telephone and telegraph *service,* whether furnished by public or private corporations or enterprises, for all intrastate telephone and telegraph *service;* (2) for gas and electric *service,* whether furnished by municipal, public or private corporations or enterprises, for gas or electricity furnished and sold for domestic and commercial consumption and not for resale." Further, subsections 2(c) and 2(j) provide: "(c) The term 'sale' or 'sale and purchase' includes installment and credit sales, and the exchange of property, as well as the sale thereof for money, every such transaction, conditional or otherwise, for a consideration, constituting a sale, *and also includes the sale or furnishing of electrical energy, gas, telephone or telegraph services taxable under the terms of this act.*" "(j) The term 'tax' means either the tax payable by the purchaser of *a commodity or service subject to tax,* or the aggregate amount of taxes due from the vendor of *such commodities or services* during the period for which he is required to report his collection, *as the context may require.*"

As additionally employed in (a) and (d) of section 15, the word "services" patently refers only to services taxable under the act.

We are satisfied the recital of the foregoing statutory provisions demonstrates, without the necessity of further elaboration or comment, that as used in the act, including section 2(n) thereof, the terms "service" or "service * * * furnished" are inclusive only of services specifically listed as being subject to taxation and taxable under the sales tax law. It thus follows that items

included in intermediate sales and purchases of tangible personal property to be exempt under section 2(n) must enter into the processing of or become an ingredient or component part of a service taxable under the Sales Tax Act. Admittedly, as has been said, such condition does not attain with respect to the sales and purchases here involved.

It is not seriously contended that any provision of the Service Tax Act permits the dispensation herein claimed. The exemption provided by section 3 thereof (chapter 158 S.L. '39, chapter 148A, '35 C.S.A. Supp., et seq.) manifestly has to do with the payment of the service tax—not sales tax—where such services enter into other taxable services or become a part of the cost of services chargeable to an ultimate purchaser or user of tangible personal property. The assertion of the company that the exemptions of section 2(n) of the Sales Tax Act, supra, should be applied judicially to prevent the pyramiding of sales taxes, as said, upon service taxpayers not only is precluded by the express provisions of the former act, as hereinabove demonstrated, but additionally is militated against by the fact that the original Sales Tax Act containing the precise statutory language above quoted, was enacted more than two years before the Service Tax Act became a law, in which circumstance it may not be assumed properly that the legislature had in mind contingencies to arise under a law not yet in being.

The view we have expressed concerning the limitation on the scope of application of the term "service" as used in section 2(n), supra, is also decisive against the argument of the company that the items in classification (3), wrapping paper, bags, etc., used to package the articles laundered or cleaned for return to the customers are exempted specifically as the "container, label or the finished shipping case thereof," since even if "thereof" is considered as including "service," such service to be exempt must be one taxable under the act, which is not

the situation of that furnished by the laundries or cleaners.

It next is contended that the sales of items which fall in classifications (2), cloths, fabrics, buttons, etc., used for purposes of repair, and (3), packaging materials, etc., to the laundries and cleaners, are wholesale sales and so immune from taxation. A "wholesale sale" not taxable under the act is defined by section 2(e) as, "A sale by wholesalers to retail merchants, jobbers, dealers or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale." Retail sales which are taxable under the act are defined by section 2(g) as follows: " 'Retail sale' includes all sales made within the state except wholesale sales." Thus, as is mentioned in *Bedford v. C. F. & I. Corp., supra,* the statutory definitions of these two types of sales are at variance with the generally accepted meanings of the terms "wholesale" and "retail." A purchaser may buy in large quantities what is commercially known as at "wholesale" and get wholesale prices and still the sale may not be exempt. Exemption depends entirely upon the disposition of a purchased product by the buyer. *Bedford v. C. F. & I. Corp., supra.* See, also, *Craftsman Painters & Decorators v. Carpenter,* 111 Colo. 1, 137 P. (2d) 414.

Conceding, as the evidence discloses, that no separate charge for any article in this classification is made to the customers of the laundries and cleaners, and that no sales tax is collected thereon, the company further points out that nevertheless their cost is averaged into the composite price paid for such service by the customer and that the tangible items used in repairing and packaging become his absolute property. Thus, it is said there is a resale by the laundries and cleaners to their customers of the tangible materials in question. The evidence clearly shows that the laundries and cleaners are engaged in service industries as distinguished from the businesses of resale at retail of tangible items pur-

chased at wholesale for such purpose. The items of cloth, fabrics, threads, etc., purchased for repair are cut and applied as may be required and so are mutilated in that process. Buttons and the like, while still retaining their original form are not resold as such but are incorporated into the repairing job. The wrapping paper, twine, etc., are cut as the packaging may require and when delivered by the laundries to their customers become waste. All these items thus are used, and for all practical purposes consumed, by the laundries and cleaners as an incident to, and part of, the service furnished by them. Under the statutory definitions and the principles announced in *Bedford v. C. F. & I. Corp.,* and *Craftsman Painters & Decorators v. Carpenter, supra,* it must be held that these purchases were for use and consumption by them and not for resale.

It further is to be observed that the last contention of the company, in common with those previously discussed, seems to be in opposition to the very theory of the Sales Tax Act, which is that the exemptions of intermediate sales transactions designed to avoid multiple taxation were adopted solely upon the basis that a sales tax should be collected on the final consumptive transaction.

The circumstance that prior regulations promulgated by the treasurer exempted the sales here in question from sales taxation, does not preclude an administrative change therein to meet the requirements of the statute and in violation of no provision thereof. *Bedford v. C. F. & I. Corp.,* and *Craftsman Painters & Decorators v. Carpenter, supra.*

The judgment is reversed.

Mr. Justice Goudy not participating.