**TRI–STATE GENERATION & TRANSMISSION ASSOCIATION, INC.,**
Plaintiff-Appellant,

v.

**The DEPARTMENT OF REVENUE of the State of Colorado, and Alan N. Charnes, Executive Director of the Department of Revenue of the State of Colorado, Defendants-Appellees.**

No. 81CA0216.

Colorado Court of Appeals,
Div. II.

Oct. 29, 1981.

Holland & Hart, Bruce W. Sattler, John C. Siegesmund, III, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Billy Shuman, Sp. Asst. Atty. Gen., Denver, for defendants-appellees.

KELLY, Judge.

Plaintiff, Tri-State Generation & Transmission Association, Inc. (Tri-State), contracted with the United States Bureau of Reclamation (United States) and two other utilities to construct and use a power transmission line between Hayden and Ault, Colorado. Defendant, Colorado Department of Revenue (Department), determined that, pursuant to § 39–26–202, C.R.S.1973, Tri-State was liable for use tax on items of tangible personal property used in the construction of the line. Tri-State claims it contracted only for a right to use the line and its payment of 36% of the construction cost represented the price of the lease, an intangible property right not subject to use tax. A trial *de novo* was held in the district court after the executive director of the Department decided that Tri-State was liable for the tax. Tri-State appeals the trial court's decision upholding the executive director's imposition of the tax, but does not dispute the amount of the tax. We affirm.

Tri-State is a non-profit utility engaged in purchasing, generating, and transmitting electricity to retail distributors in Nebraska, Wyoming, and Colorado. In 1975, Tri-State contracted with the United States, Platte River Power Authority (Platte River), and Colorado-Ute Electric Association, Inc., (Colorado-Ute) to construct a new power transmission line from Hayden to Ault, Colorado (Hayden-Ault line). The participants agreed that the United States would act as construction manager for part of the Hayden-Ault line and that Colorado-Ute would be the construction manager for another part of the project.

The contract specified that the United States and Colorado-Ute "shall own and have title to" the respective sections for which they acted as construction manager, but that "notwithstanding ownerships and titles, the Participants shall have Cost Responsibilities and Firm Capacity Entitlement [the right to future use] in the Hayden-Ault Addition" in certain stated percentages. The contract required the United States as title owner to grant Tri-State an "easement for the use and enjoyment of the facilities, including right-of-way . . . to the extent of its Firm Capacity Entitlement therein."

Each participant was represented on an Engineering & Operating Committee, an Auditing Committee, and a Coordinating Committee which supervised the project. Tri-State advanced funds every month to cover construction costs in proportion to its share of the future use of the line, which was 36%. As construction manager, the United States caused this money to be spent on supplies and materials used to construct the line. The United States paid

no sales or use tax on the materials. For the portion of the line constructed by the United States, Tri-State was required to insure against its share of any losses, and the United States was to cooperate with Tri-State in obtaining insurance.

■ The Department assessed a use tax against Tri-State for 36% of the materials used in constructing the Hayden-Ault line. The use tax statute provides:

"There is imposed and shall be collected from every person in this state a tax or excise for the privilege of storing, using, or consuming in this state any articles of tangible personal property purchased at retail." Section 39–26–202, C.R.S.1973.

Hence, the components of use tax liability are (1) tangible personal property (2) purchased at retail (3) without prior payment of sales or use tax and (4) use or consumption in Colorado. *Fifteenth Street Investment Co. v. People*, 102 Colo. 571, 81 P.2d 764 (1938).

Tri-State argues that it purchased only the intangible right to use the line until the year 2014, and that the price of that right was 36% of the construction cost. According to Tri-State, only the property owner can be liable for a use tax, and in the instant case, the United States owns the line and Tri-State merely leases part of it temporarily. Tri-State asserts that its membership on the committees which had veto power over the acquisition of materials was a mere "theoretical voice" which was never exercised, and that the setting of a contract price by reference to construction costs is not equivalent to ownership.

■ The Department correctly contends that use tax liability depends on use, not ownership. Tri-State's reliance on *Denver v. Security Life & Accident Co.*, 173 Colo. 248, 477 P.2d 369 (1970), is misplaced because that case concerned an ad valorem tax on the "owner" of property, while § 39–26–202 assesses "every person" who uses property which has been purchased at retail. *See J. A. Tobin Construction Co. v. Weed*, 158 Colo. 430, 407 P.2d 350 (1965) (use tax obligation is on consumer).

In *Fifteenth Street Investment Co. v. People, supra*, a building owner resisted use tax on the components of an elevator installed by Otis Elevator Co. The court noted that "the owner . . . who determines the nature and character of the structure . . . is the one who . . . *uses* all of the materials entering into the structure. . . . If the owner does the work himself, there can be no question . . . as to who used the material. When he engages another to erect the structure . . . the act of making the improvement is still his act. . . . Such materials as he puts into the work are used by the one directing and controlling it." Here, as in *Fifteenth Street*, Tri-State shared in the direction and control of the construction project and, therefore, "used" the materials for use tax purposes.

■ Even if ownership is a prerequisite of tax liability, Tri-State cannot characterize itself as a mere lessee when it contracted for the construction, use, operation, maintenance, and replacement of the line. Its veto power over acquisition of materials was an incident of ownership whether or not it was exercised, and monthly payment of on-going construction costs is more than a device for setting the price of the lease. Also, Tri-State was required to insure against loss of the materials, and the participants agreed to cooperate in constructing the line, using the United States and Colorado-Ute as their agents for the acquisition of materials.

The condition precedent to Tri-State's use of the line was its payment of 36% of the construction costs, which included the purchase of tangible personal property on which the United States paid no sales tax. Tri-State cannot escape use tax liability by making a private contract with the United States to act as a buyer of materials on its behalf.

The judgment is affirmed.

ENOCH, C. J., and VAN CISE, J., concur.