HOWARD ELECTRICAL AND
MECHANICAL, INC.,
Petitioner,

v.

The DEPARTMENT OF REVENUE OF
the STATE OF COLORADO, a Depart-
ment of the State, and Alan Charnes,
Executive Director of the Department
of Revenue, Respondents.

No. 87SC338.

Supreme Court of Colorado,
En Banc.

March 13, 1989.

Rehearing Denied March 27, 1989.

As Modified on Second Denial of Rehearing
April 17, 1989.

Melvin Coffee & Associates, P.C., Melvin
A. Coffee, Rhonda G. Fellers, Denver, for
petitioner.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.
Forman, Sol. Gen., Larry A. Williams, First
Asst. Atty. Gen., Denver, for respondents.

VOLLACK, Justice.

Howard Electrical and Mechanical, Inc.
appeals from *Howard Electrical & Me-
chanical, Inc. v. Department of Revenue,*

748 P.2d 1321 (Colo.App.1987), in which the court of appeals affirmed that part of the district court's judgment that affirmed the Department of Revenue's holding that Howard was liable for Regional Transportation District (RTD) taxes. The court of appeals reversed that part of the judgment which held that collection of RTD taxes for the taxable years 1976, 1977 and 1978 was barred by the statute of limitations. We affirm the court of appeals ruling in part, reverse in part, and remand to the court of appeals with directions to reinstate the district court's judgment.

## I.

The underlying events are not in dispute; the parties have stipulated to the following facts. Howard Electrical and Mechanical, Inc. (Howard) is an electrical and mechanical engineering contractor that provides contracting services, including labor and materials, to third parties for construction of specific job projects. For a number of years Howard has held a sales tax license that permits it to purchase tangible personal property at retail prices without paying sales tax at the time of purchase.

In 1973 the General Assembly enacted the Regional Transportation District (RTD) Act, sections 32–9–101 through –161, 13 C.R.S. (1973), giving RTD the power to levy a sales tax on "every transaction or other incident [occurring in the RTD district] with respect to which a sales tax is now levied by the state." § 32–9–119(2), 13 C.R.S. (1973). The RTD Act became effective in 1974.

From January 1976 through December 1982, Howard purchased building materials and supplies in the RTD district. When it made these purchases Howard did not pay Colorado sales tax and did not pay RTD tax. The vendor did not collect Colorado sales tax at the time of purchase because Howard displayed a valid sales tax license. Howard used these materials in the construction of buildings to fulfill its construction contracts. On Howard's yearly tax returns it reported these purchases as subject to Colorado use tax under sections 39–26–201 to –211 and paid that tax. Howard did not pay any RTD tax on these purchases at the time of purchase.

In May 1979 the Department of Revenue (Department) issued notices of deficiency [1] to Howard in the approximate amount of $250,000. The alleged deficiency arose from Howard's failure to pay RTD tax on tangible personal property purchased in 1976, 1977 and 1978, for use in fulfilling its construction contracts. Howard disputed the applicability of the RTD tax, and a hearing was held at the Department. The Department Deputy Director ruled that the purchases were retail sales and that Howard was liable for both Colorado sales tax and RTD sales tax at the time the materials were purchased from the vendor.

Howard appealed the hearing officer's ruling finding that it was liable for the unpaid RTD tax, and the district court conducted a *de novo* review. The district court held that C.R.S. section 32–9–119(2) explicitly authorized imposition of an RTD sales tax and implicitly authorized an RTD use tax. For this reason, the district court found Howard liable for an RTD use tax on these transactions. The district court also held that the statute of limitations barred the Department from collecting the RTD tax for 1976, 1977 and 1978.

On appeal, the court of appeals affirmed that part of the district court's order authorizing the assessment of RTD use tax under section 32–9–119(2). The court of appeals reversed that part of the order finding that collection of RTD tax for the years 1976 through 1978 was barred by the statute of limitations. Howard filed a petition for writ of certiorari in this court and we granted certiorari to address two issues. The first issue is whether Howard is liable for payment of RTD tax on tangible personal property purchased in the RTD district and used in fulfilling its construction

---

1. Two notices of deficiency were issued: one notice to Howard Electric Company and one notice to Howard Mechanical Company. The two companies merged in 1980. Howard Electrical and Mechanical, Inc. became the successor to the two companies and succeeded to all the rights and liabilities of Howard Electric and Howard Mechanical.

contracts. The second issue is whether the court of appeals correctly held that the notice of deficiency entered by the Department of Revenue tolled the applicable statute of limitations or, alternatively, was itself an assessment.

## II.

We first decide whether the court of appeals correctly affirmed the district court's ruling that Howard is liable for payment of an RTD use tax on tangible personal property it purchased in the RTD district and used to fulfill its construction contracts. Resolution of this question depends on our interpretation of section 32-9-119(2) in the context of the Sales and Use Tax Statute.

Article 9 of title 32 is the "Regional Transportation District Act." Section 32-9-119(2)(a) of the RTD Act gives

the [RTD] board ... the power to levy uniformly throughout the district a *sales tax* at the rate of six-tenths of one percent *upon every transaction or other incident with respect to which a sales tax is now levied by the state, pursuant to the provisions of article 26 of title 39,* C.R.S.

(1988 Supp.) (emphasis added). The same subsection also provides:

(2)(c) Sales tax levied pursuant to this subsection (2) shall be collected, administered, and enforced as follows:

(I) *The collection, administration, and enforcement of said sales tax shall be performed* by the executive director of the department of revenue *in the same manner as* the collection, administration, and enforcement of *the state sales tax imposed under article 26 of title 39,* C.R.S., ...

(1988 Supp.) (emphasis added).

Article 26 of title 39, expressly incorporated in these provisions of the RTD Act, is titled "Sales *and Use* Tax." Sections 39-26-101 through -126 (Part 1) concern Sales Tax, sections 39-26-201 through -211 (Part 2) concern Use Tax, and Part 2 is, by definition, supplementary to Part 1. § 39-26-203(1), 16B C.R.S. (1982).

A tax statute, like any other statute, must be construed "to give consistent, harmonious and sensible effect to all its parts." *J.A. Tobin Constr. Co. v. Weed,* 158 Colo. 430, 435, 407 P.2d 350, 353 (1965). A sales tax is a tax on a purchase, whereas "[a] use tax is a levy upon the 'privilege of storing, using, or consuming in this state ... tangible personal property purchased at retail.'" *IBM v. Charnes,* 198 Colo. 374, 377, 601 P.2d 622, 624 (1979) (quoting § 39-26-202). A use tax is considered supplementary to, not separate from, sales tax. *Id.; Matthews v. Department of Rev.,* 193 Colo. 44, 46, 562 P.2d 415, 417 (1977). Use tax is "a complement to the sales tax designed to form a comprehensive tax system.... In theory it would appear from the statute that the tax is in reality a tax upon the right to use property upon which a sales tax has not been paid." *Kentucky v. City of Elizabethtown,* 435 S.W. 2d 78, 79–80 (Ky.App.1968).

Statutes must be construed as a whole. *Jaeger v. Colorado Ground Water Comm'n,* 746 P.2d 515, 521 (Colo.1987). Vendors are liable for the payment of sales tax. If a sales tax has not been collected by a vendor, however, the purchaser is liable for the use tax. *Tobin,* 158 Colo. at 435, 407 P.2d at 353. "[T]he components of use tax liability are (1) tangible personal property (2) purchased at retail (3) without prior payment of sales or use tax and (4) use or consumption in Colorado." *Tri-State Generation & Transmission Ass'n, Inc. v. Department of Rev.,* 636 P.2d 1335, 1337 (Colo.App.1981); §§ 39-26-202(1), -203(1), 16B C.R.S. (1982 & 1988 Supp.). The use tax is supplementary to the sales tax rather than separate from it. *Matthews v. Department of Rev.,* 193 Colo. 44, 46, 562 P.2d 415, 417 (1977). Liability for use tax depends on the use of tangible personal property rather than ownership of the property. *Tri-State,* 636 P.2d at 1337. While use of tangible personal property may constitute a taxable event, only tangible personal property purchased at retail is subject to use tax. *C.F. & I. Steel Corp. v. Charnes,* 637 P.2d 324, 330 (Colo.1981).

■ Applying the four components of use tax liability to the facts presented here, we first note that the stipulation describes Howard's purchases as "retail purchases" in the RTD district. Because this was a retail purchase and the purchase occurred in the RTD district, the first component is met. Second, the stipulation also acknowledges that this was a purchase of tangible personal property, so the second component is met. The third requirement is that there was no prior payment of sales or use tax. No Colorado sales tax was paid at the time of purchase. Howard reported the purchases as subject to Colorado use tax on its combined retail sales tax returns and paid Colorado use tax. There was no RTD tax collected at the time of purchase and no RTD tax paid on Howard's tax returns, so for purposes of the RTD tax at issue here, no sales or use tax has been paid. Finally, the tangible personal property must be used or consumed in Colorado. The stipulation stated that the purchased materials "would either be installed in job projects also located within the RTD District, or would be directly delivered to plaintiff within the RTD District." We therefore conclude that the four components of use tax liability are met.

In an earlier case, we analyzed the general "Sales and Use Tax" section and reached this conclusion:

> The entire chapter clearly indicates a *legislative intent to impose a tax* in the amount levied upon purchases of tangible personal property at retail, *such tax to be either in the nature of an addition to the sales price* and collected by the seller if he is a licensed vendor as defined in the act, *or a tax to be paid by the consumer* when the seller of the merchandise is not a "retailer" or "vendor" as those terms are defined by the statute.

*Tobin*, 158 Colo. at 435, 407 P.2d at 353 (emphasis added).

"Although [a plaintiff] contends that the use tax is a separate tax and should be viewed in isolation, only the most abstract legalistic approach can justify such an argument." *Matthews*, 193 Colo. at 46–47,

562 P.2d at 417. "We are aware of no court where such an artificial division of the tax scheme has been accepted in determining the effects of the use tax on commerce." *Id.* at 47, 562 P.2d at 417.

Keeping these principles in mind, we agree with the district court's conclusion that "the legislature, in denoting the entire article and not specific sections of Article 26, Title 39, has authorized an RTD use tax to complement the RTD sales tax and create the harmony required to render the entire tax collection scheme described in Article 26 of Title 39, C.R.S., 1973 workable." In so holding, we recognize that as a general rule tax statutes are to be construed most strongly against the taxing authority. *See, Associated Dry Goods Corp. v. City of Arvada*, 197 Colo. 491, 593 P.2d 1375 (1979). In this case, however, the legislature made the following statement:

> **32-9-104. Liberal construction.** *[T]he rule of strict construction shall have no application to this article,* but it shall be liberally construed to effect the *purposes and objects for which this article is intended.*

13 C.R.S. (1973).

The hearing officer in this case imposed a tax which he characterized as an RTD sales tax. The district court affirmed imposition of the tax, but found it to be an implied RTD use tax rather than an RTD sales tax. The court of appeals affirmed and held that "[t]he obligation for payment of the tax is upon the consumer [Howard] whether the tax is called a 'sales' tax or a 'use' tax." *Howard*, 748 P.2d at 1324. The court thus concluded that "whether the tax is characterized as a 'use' tax or as a 'sales' tax is immaterial." *Id.* On that basis, the court of appeals rejected Howard's argument that C.R.S. section 32–9–119(2) authorizes only the assessment of an RTD sales tax and not the assessment of an RTD use tax. *Id.* at 1323–24.

A general rule of statutory construction is that "[w]hen courts are faced with a problem of statutory construction, deference should be given to the interpretation given the statute by the officer or agency

charged with its administration." *Lucero v. Climax Molybdenum Co.,* 732 P.2d 642, 645–46 (Colo.1987) (citing *Colorado Gen. Assembly v. Lamm,* 700 P.2d 508, 523 (Colo.1985)). Courts are not bound, of course, by an agency decision that misconstrues or misapplies the law. *Colorado Div. of Employment & Training v. Parkview Episcopal Hosp.,* 725 P.2d 787, 790 (Colo.1986). An administrative agency's construction of a statute "should be given great deference" but is not binding on the court. *Id.* at 790–91; *Travelers Indem. Co. v. Barnes,* 191 Colo. 278, 282, 552 P.2d 300, 303 (1976) ("[C]onstruction of a statute by administrative officials charged with its enforcement shall be given great deference by the courts. *Reardon v. United States,* 491 F.2d 822, 824 (10th Cir.1974).").

When the RTD Act became effective in 1974, a notice was issued by the Executive Director of the Department of Revenue advising vendors that if they purchased at wholesale, they were required to pay RTD tax on items which were later used or consumed in their business.[2] The Department explicitly warned retail license holders that retailers who did not pay the RTD tax were improperly using the retail license.

Another principle of statutory construction is that the court must choose a construction that will serve the purposes of the legislative scheme. *Colorado Dep't of Social Servs. v. Board of County Comm'rs,* 697 P.2d 1, 18 (Colo.1985). We already concluded that the four components of use tax liability are met. The RTD sales tax statute expressly incorporates the provisions of article 26 of title 39, governing "Sales and Use Tax." Had the legislature intended to confine collection of the RTD tax to only the sales tax provisions, it could have limited its incorporation of the Sales and Use Tax Act to Part 1 of article 26 (Sales Tax) rather than including both Part 1 (Sales Tax) and Part 2 (Use Tax). We are required, where possible, to construe a statute in such a way as to give consistent effect to all its parts. *City of Ouray v. Olin,* 761 P.2d 784, 788 (Colo. 1988).

Another principle which guides our decision is that when the legislature is aware of the construction already given to a previous statute, and reenacts the statute without change, the reenactment "in effect amount[s] to a legislative confirmation of the prior existing rules of interpretation." *Bedford v. Colorado Fuel & Iron Corp.,* 102 Colo. 538, 547, 81 P.2d 752, 756 (1938). In *Bedford,* the rule of construction promulgated by the state treasurer "had been in force for almost two years [before] the legislature reenacted the present sales tax law ... making no change whatever" in the pertinent section of the act. *Id.* In this case, the RTD act became effective in 1974 and in March, 1974, the Department Executive Director issued his interpretation of section 32–9–119(2)(a). In 1980 section (2) was repealed and reenacted, and in both 1982 and 1983 section (2)(a) was amended.[3] Thus, the legislature had the opportunity to change section (2)(a) numerous times, but did not do so. This supports our conclusion that the Department's interpretation of section 32–9–119(2)(a) as authorizing collection of an RTD tax is correct.

---

**2.** This notice stated in its entirety:

The Department has discovered that some licensed retailers are making tax free purchases of tangible personal property for their own use and consumption and later remitting State Consumer Use Tax but are not paying the ½% R.T.D. tax even though the sale took place within the R.T.D. district. This practice constitutes an improper use of the retailer's license; and may result in the assessment of penalties and interest, including penalties for fraud under certain circumstances. The law assesses an R.T.D. sales tax on transactions within the district with certain specific statutory exemptions. Any item of tangible personal property purchased within the district initially for the use or consumption of a licensed retailer is subject to the payment of the R.T.D. sales tax, even though there is no specific provision rendering the transaction subject to use tax.

You are hereby advised that the Department intends to conduct audits and otherwise vigorously investigate and prosecute any retailers who fail to remit the proper R.T.D. taxes.

**3.** Ch. 141, sec. 4, § 32–9–119(2), 1980 Colo.Sess. Laws 679, 681; ch. 134, sec. 1, § 32–9–119(2)(a), 1982 Colo.Sess.Laws 498, 498; ch. 349, sec. 2, § 32–9–119(2)(a), 1983 Colo.Sess.Laws 1208, 1209.

There is a "strong presumption that taxation is the rule and exemption the rare exception." *Southwest Catholic Credit Union v. Charnes,* 665 P.2d 626, 627 (Colo. App.1982). We cannot agree with Howard that the purpose of this legislative scheme was to immunize Howard from the payment of RTD tax when it purchased tangible personal property in the RTD district. As the Department points out, if we find Howard immune from the payment of RTD tax the result would be assessment of a tax "against the innocent retailer-vendor for the taxes that Howard should have paid and owes as the ultimate consumer." Answer Brief, at 19. Howard's claim that injustice or unfairness results merely because Howard, as the ultimate consumer of the purchased goods, is now being required to pay the tax it should have paid at the time of purchase is without merit. The Executive Director of the Department issued an unambiguous notice advising Howard and other licensed contractors that the practice of purchasing tangible personal property for a contractor's use and consumption in an RTD District, without paying the RTD tax, "constitutes an improper use of the retailer's license." Howard was so advised, but chose not to pay an RTD tax in any form.

In a similar case, the Utah Supreme Court affirmed a use tax assessed against "the ultimate consumer" when the retailer-vendor had not collected the tax. *Ralph Child Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 53, 362 P.2d 422 (1961).

> The use tax applies to a storing, using, or otherwise consuming within this state of goods purchased which are not covered by the sales tax. In such case, the person storing, using or otherwise consuming such property is liable for the use tax, except if the purchase is made through a retailer within this state the tax may be collected by such retailer and paid by him to the [Tax] Commission. But the liability of the consumer is not extinguished until the tax is paid to this state.

*Id.* at 59, 362 P.2d at 425. Likewise, we conclude here that the liability of the consumer is not extinguished until the tax is paid to the state, regardless of whether the tax is labeled as a sales tax or an implied use tax.

The hearing officer characterized the tax as an RTD sales tax. The district court found that Howard was liable for an implied RTD use tax. The court of appeals suggested that it was immaterial whether this was designated as a sales or use tax, but held that "the trial court correctly determined that the materials purchased were subject to an *RTD use tax.*" 748 P.2d at 1324 (emphasis added). We are not persuaded to adopt "an artificial division of the tax scheme" by viewing the use tax as "a separate tax [that] should be viewed in isolation." *Matthews,* 193 Colo. at 46–47, 562 P.2d at 417. Recognizing the legislature's direction that the RTD act "be liberally construed to effect the purposes and objects for which [it] is intended," we conclude that when the components of use tax liability have been met, the retail goods have been purchased in the RTD District, and no RTD tax has been paid, then the purchaser is liable for the RTD tax. We agree with the court of appeals that "whether the tax is characterized as a 'use' tax or as a 'sales' tax is immaterial." 748 P.2d at 1324. We conclude that under these facts, the district court was correct and Howard is liable for an implied RTD use tax. The court of appeals correctly affirmed the district court's ruling that Howard is liable for the unpaid RTD tax.

### III.

■ Having concluded that Howard is liable for the RTD tax, the second issue for our resolution is whether the court of appeals correctly held that the statute of limitations did not bar the Department from collecting RTD tax from Howard for the taxable period January 1, 1976, through December 31, 1978.

In this case, a notice of deficiency for the taxable years 1976, 1977 and 1978 was issued by the Department on May 4, 1979. On July 5, 1979, the Department issued a "Notice of Final Determination and Assessment and Demand for Payment," demanding payment of $129,030.55 for these three years. Howard filed a protest, however,

and two weeks later the Department "cancelled" the notice of final determination. Howard executed numerous forms entitled "Extension of Time for Assessment and Refund." These forms provided for waiver of the statute of limitations for "a hearing and final determination" by the Department. The deadline for the hearing and final determination of Howard's tax liability was ultimately extended by agreement to December 31, 1983.

The hearing was held on December 5, 1983, and at the conclusion of the hearing the hearing officer entered his verbal decision that Howard was liable for the RTD tax. Not until January 20, 1984, however, did the hearing officer issue a written order to this effect. The written order, which was titled a "Final Determination," was not issued *nunc pro tunc* to the oral ruling at the 1983 hearing.

The district court held that the extension or waiver of the statute of limitations for this taxable period "expired on December 31, 1983." Because the Department did not issue its final determination until January 20, 1984, the district court judge held:

The extension of the statute of limitations for the tax period of January 1, 1976, through December 31, 1978, expired on December 31, 1983. The Defendant [the Department of Revenue] failed to issue its final determination by that time. Thus, the Defendant was in violation of the express provisions of the waiver agreement. Because the extension expired, the Plaintiff was again entitled to assert the statute of limitations as a defense for the tax period in question here.

The final determination constitutes an assessment of taxes occurring more than three years from the time the taxes became payable. The Defendant had means to protect itself from the expiration of the limitations period. The Defendant could have issued a final determination prior to December 31, 1983. Failing that, it could have requested an additional extension or assessed a jeopardy assessment under § 39–21–111, C.R.S., 1973.

Thus, this Court concludes that the RTD taxes and interest assessed for the tax period of January 1, 1976, through December 31, 1978, are barred by the statute of limitations, under § 39–26–210, C.R.S., 1973.

The district court applied section 39–26–210, which states in part:

**Limitations.** The taxes for any period, together with the interest thereon and penalties with respect thereto, imposed by this part 2 shall not be assessed, nor shall any ... suit for collection be instituted, nor any other action to collect the same be commenced, more than three years after the date on which the tax was or is payable.... *Before the expiration of such period of limitation, the taxpayer and the executive director of the department of revenue may agree in writing to an extension thereof, and the period so agreed on may be extended by subsequent agreements in writing.*

§ 39–26–210, 16B C.R.S. (1982) (emphasis added). Waivers can be for either a specific period of time or for an unlimited period of time. When an unlimited waiver of the limitations period is executed, it is "generally construed to extend either for a reasonable time or until the waiver is terminated by either party after reasonable notice." *C.F. & I. Steel Corp. v. Charnes*, 637 P.2d 324, 332 (Colo.1981).

As in Colorado, the Minnesota tax statute provides that "the time for assessments may be extended only if a consent to such extension is obtained in writing before the expiration of the time prescribed for assessing the tax." *Minnesota v. Bies*, 258 Minn. 139, 150, 103 N.W.2d 228, 237 (1960). The Minnesota Supreme Court noted:

The legislature has given the taxing authorities explicit authority to extend the period of limitation by agreement but has made the condition that such power be exercised before the statute runs. *If there is a failure of compliance in that regard on the part of the taxing authorities, the statutory limitation provisions of the Income Tax Act must be strictly adhered to by the judiciary.*

*Id.* (emphasis added).

The waivers of the limitations period for the 1976–1978 tax years in this case were

for specific time periods, the final waiver having an expiration date of December 31, 1983. The statute of limitations was waived until December 31, 1983. Three weeks later, on January 20, 1984, the Department issued its final determination. Because Howard's waiver expired on December 31, 1983, when the December 31 deadline passed without a final determination by the Department, Howard regained its right to assert the statute of limitations as a defense. For this reason, the district court correctly ruled that the Department did not comply with the deadline requirement agreed upon in the waiver.[4] Howard validly asserted this defense and the district court correctly found that collection of the RTD tax for these three years was barred. We therefore affirm in part, reverse in part, and remand to the court of appeals with directions to reinstate the district court's judgment.

---

**4.** The court of appeals reversed the decision of the trial court by ruling that a notice of deficiency is an " 'assessment' for the purposes of the statute of limitations." 748 P.2d at 1326 (citation omitted). Based on this conclusion, the court of appeals held that the Department was not barred from collecting the RTD tax from

Howard for 1976, 1977 and 1978. Because we conclude that the district court correctly applied the language of the waiver in resolving the statute of limitations question, we do not address whether the court of appeals correctly characterized the notice of deficiency as an assessment.