The **REGIONAL TRANSPORTATION DISTRICT, a special district; Alan N. Charnes, Director of the Colorado Department of Revenue; and the Department of Revenue, State of Colorado, Petitioners,**

v.

**MARTIN MARIETTA CORPORATION, Respondent.**

No. 89SC253.

Supreme Court of Colorado,
En Banc.

Feb. 11, 1991.

As Modified on Denial of Rehearing
March 11, 1991.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Anthony S. Trumbly, Asst. Atty. Gen., Denver, for petitioners.

Holme Roberts & Owen, David S. Steefel and Susan Begesse Prose, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Martin Marietta v. Regional Transportation District,* 772 P.2d 668 (Colo.App.

1989), the Colorado Court of Appeals held that the Department of Revenue, State of Colorado (the Department), a petitioner herein, erroneously assessed Colorado use taxes and Regional Transportation District (RTD) taxes on purchases of certain items of tangible personal property by respondent, Martin Marietta Corporation (Martin). We granted certiorari to consider the propriety of that court's determination that Martin's purchases were purchases for resale and therefore exempt from use tax and RTD tax assessments under applicable statutory provisions. We reverse.

## A

The material facts are not in dispute.[1] Martin, a Maryland corporation specializing in defense and aerospace technologies, was at all relevant times the prime contractor under approximately fifty contracts with various executive agencies of the United States government. In general, the contracts required Martin to produce and deliver specified products to federal agency customers.

In preparing to perform the contracts, Martin purchased from vendors "special testing and tooling equipment" (equipment).[2] Martin used the equipment solely in the performance of the contracts or as otherwise directed by a federal agency customer. None of the equipment here at issue was incorporated into the final products delivered to Martin's federal agency customers.

In performing the contracts, Martin also used many items of tangible personal property acquired by the federal government prior to the date of the contracts and furnished to Martin for that purpose. The Department has not sought to assess state use taxes or RTD taxes on Martin's use of property so furnished by its customers.

Martin acquired the equipment with its own funds and in its own name. It did not purchase the equipment as an agent or instrumentality of the federal government. The contracts provided for Martin's reimbursement for all amounts it paid for the equipment, and also contained clauses regulating Martin's management, administration and disposition of the equipment. Under all of the contracts, title to the equipment vested in the federal government prior to, or at the commencement of, Martin's use thereof.[3] After completing its use of the equipment, Martin delivered the equipment to its customers or, when appropriate, complied with special instructions of its customers concerning disposition of the equipment.

Use taxes and RTD taxes were assessed by the Department and by RTD, respectively, against Martin for its purchases of the equipment for the period April 1, 1979, to March 31, 1982.[4] Martin protested the assessments, and a hearing was conducted on March 6 and 7, 1984, by the Director of the Department to consider the protest. *See* § 39–21–103, 16B C.R.S. (1982). The Director upheld the assessments, concluding that Martin's purchases were not purchases for resale. Martin paid the taxes under protest and filed an action seeking refund of the sums paid. § 39–21–105, 16B C.R.S. (1982).

**1.** The parties entered into a joint stipulation of facts prior to trial.

**2.** The record does not contain descriptions of the equipment in question.

**3.** The contracts are of three different types: cost-reimbursement contracts; non-progress-payment, fixed-price contracts; and progress-payment, fixed-price contracts. Under the cost-reimbursement contracts, title vested in the federal government upon the vendor's delivery of the equipment to Martin. Under non-progress-payment, fixed-price contracts, title vested in the federal government immediately upon the earlier of (1) Martin's commencement of use of the equipment, or (2) payment to Martin by the federal government for the equipment. Under progress-payment, fixed-price contracts, title vested in the federal government upon the date of purchase. Under all the contracts, the federal government assumed the risk of loss and damage to the equipment except for damage caused by such factors as willful misconduct or bad faith.

**4.** RTD sales taxes may be imposed only upon transactions subject by statute to the imposition of sales or use taxes. § 32–9–119(2)(c)(I), 13 C.R.S. (1990 Supp.); *Howard Elec. and Mech., Inc. v. Department of Revenue*, 771 P.2d 475 (Colo.1989).

The district court entered judgment in favor of Martin. It concluded that under the stipulated facts the equipment was purchased for resale and was therefore exempt from use tax and RTD tax assessments pursuant to section 39–26–203(1)(b), 16 C.R.S. (1982). On appeal, the Court of Appeals affirmed that judgment.

### B

The General Assembly has by statute levied taxes "[o]n the purchase price paid or charged upon all sales and purchases of tangible personal property at retail...:" § 39–26–104(1)(a), 16B C.R.S. (1982). The General Assembly has also authorized the imposition of use taxes on sales of tangible personal property as a supplement to the imposition of sales taxes. §§ 39–26–202, –203(1); *State Dept. of Revenue v. Adolph Coors Co.,* 724 P.2d 1341, 1344 (1986); *International Business Machs. Corp. v. Charnes,* 198 Colo. 374, 377, 601 P.2d 622, 624 (1979); *Matthews v. State, Dept. of Revenue,* 193 Colo. 44, 47, 562 P.2d 415, 417 (1977). The term "sale" is defined in pertinent part as follows:

> "Sale" or "sale and purchase" includes installment and credit sales and the exchange of property as well as the sale thereof for money; every such transaction, conditional or otherwise, for a consideration, constituting a sale....

§ 39–26–102(10), 16B C.R.S. (1982). The term "retail sale" is defined to include "all sales made within the state except wholesale sales." § 39–26–102(9), 16B C.R.S. (1982). The term "wholesale sale" is defined as follows:

> "Wholesale sale" means a sale by wholesalers to retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers not for resale; and the latter sales shall be deemed retail sales, and subject to the provisions of this article.

§ 39–26–102(19), 16B C.R.S. (1982).

This statutory scheme establishes a broad base for the imposition of retail sales taxes or use taxes on most transactions involving tangible personal property. *See*

*Craftsman Painters & Decorators v. Carpenter,* 111 Colo. 1, 137 P.2d 414 (1942); *Bedford v. Colorado Fuel & Iron Corp.,* 102 Colo. 538, 81 P.2d 752 (1938). Wholesale sales for resale are exempt from the inclusive program of taxation established by the General Assembly. § 39–26–203(1)(b), 16B C.R.S. (1982); *see Bedford,* 102 Colo. at 543, 81 P.2d at 752. As we stated in *Bedford:* "The [sales and use tax] statute was fundamentally intended to impose a tax upon that which is consumed and used and exempts only that which is sold for resale." 102 Colo. at 543, 81 P.2d at 752.

■ In this case, the petitioners argue that Martin's purchases of equipment were not exempt purchases for resale because Martin used the items in the performance of its contracts with its federal agency customers. This argument assumes that the test of whether a purchase is for resale as contemplated by section 39–26–102(19) and therefore exempt from the imposition of retail sales taxes or use taxes is whether the purchaser refrains from using the item in any fashion. That standard, if adopted, would certainly enlarge the range of commercial transactions subject to the imposition of such taxes. However, in our view, it would impermissibly narrow the scope of the wholesale for resale exclusion created by the General Assembly.

In *A.B. Hirschfeld Press, Inc. v. City and County of Denver,* 806 P.2d 917 (Colo. 1991), we considered a wholesale for resale exclusion adopted by the City and County of Denver in language almost identical to the language of the statute. We concluded that for purposes of the Denver Municipal Code, a purchase of an item of tangible personal property is a purchase for resale and therefore not a retail sale if the primary purpose of the transaction is the acquisition of the item for resale in an unaltered condition and basically unused by the purchaser. *Id.* at 921. The test requires objective evaluation of the nature of the purchaser's contractual obligations, if any, to use, alter or consume the property to produce goods or perform services; the degree to which the items in question are

essential to the purchaser's performance of those obligations; the degree to which the purchaser controls the manner in which the items are used, altered or consumed prior to their transfer to third parties; and the degree to which the form, character or composition of the items when transferred to third parties differ from the form, character or composition of those items at the time they were initially purchased. *Id.* at 921.

The primary purpose test articulated in *Hirschfeld* was derived to a large extent from the structure and language of the Denver Municipal Code. We also referred to several decisions of this court in which we explored issues arising under prior versions of the state retail sales tax and use tax statutes. *See Howard Elec. and Mech., Inc. v. Department of Revenue,* 771 P.2d 475 (Colo.1989); *C.F. & I. Steel Corp. v. Charnes,* 637 P.2d 324 (Colo.1981); *International Business Machs. Corp. v. Charnes,* 198 Colo. 374, 601 P.2d 622 (1979); *Carpenter v. Carman Distrib. Co.,* 111 Colo. 566, 144 P.2d 770 (1943); *Craftsman Painters & Decorators v. Carpenter,* 111 Colo. 1, 137 P.2d 414 (1942); *Bedford v. Colorado Fuel & Iron Corp.,* 102 Colo. 538, 81 P.2d 752 (1938). The structure and language of the retail sales tax and use tax statute are almost identical to the structure and language of the parallel provisions of the Denver Municipal Code. These considerations lead us to the conclusion that the question of whether a purchase of an item of tangible personal property is a purchase for resale as contemplated by the statute requires a determination of whether the item is purchased primarily for resale in an unaltered condition and basically unused by the purchaser. *See Kaiser Steel Corp. v. State Bd. of Equalization,* 24 Cal.3d 188, 154 Cal.Rptr. 919, 593 P.2d 864 (1979); *Baltimore Foundry & Mach. Corp. v. Comptroller,* 211 Md. 316, 127 A.2d 368 (Md. 1956). The use to which the purchaser puts the property will often define the true nature of a particular transaction. *See Howard Elec. and Mech., Inc. v. Department of Revenue,* 771 P.2d 475 (Colo.1989); *State Dept. of Revenue v. Adolph Coors Co.,* 724 P.2d 1341 (1986); *International Business Machs. Corp. v. Charnes,* 198 Colo. 374, 601 P.2d 622 (1979); *Carpenter v. Carman Distrib. Co.,* 111 Colo. 566, 144 P.2d 770 (1943). The test does not emphasize the subjective intent of the purchaser, but rather focuses on the conduct of the purchaser. It reconciles the broad legislative intent to impose retail sales taxes or use taxes on most commercial transactions with the legislative determination that purchases of tangible personal property for resale should be exempt from such taxation.

■ In this case, the Director found that the items of property in question were purchased by Martin in its own name as buyer, not as an agent of the United States government, for use in the performance of its government contracts. The parties stipulated to these facts in the judicial review proceeding initiated by Martin in the district court. According to the stipulated record, Martin is correct in arguing that the contracts in question contain provisions regulating Martin's use and ultimate disposition of the property and that title to the property was in all circumstances conveyed to Martin's federal agency customers prior to any substantial use by Martin. However, Martin's use of the property, not its transfer of title thereto to its federal agency customers, is of primary significance in the determination of the primary purpose for which the items were purchased. *See Howard Elec. and Mech., Inc. v. Department of Revenue,* 771 P.2d 475, 477 (Colo. 1989); *Tri-State Generation & Transmission Ass'n, Inc. v. Department of Revenue,* 636 P.2d 1335, 1337 (Colo.App.1981); *Carpenter v. Carman Distrib. Co.,* 111 Colo. 566, 576, 144 P.2d 770, 774 (1943); *Craftsman Painters & Decorators v. Carpenter,* 111 Colo. 1, 5–6, 137 P.2d 414, 416 (1942). In our view, the facts found by the Director and stipulated to by the parties in the judicial review proceeding compel the conclusion that the primary purpose of Martin's purchases was for Martin's use in performing its contractual obligations, and not for resale. Thus, contrary to the conclusion reached by the Court of Appeals, the Director properly assessed use taxes

against Martin for its purchases of the equipment.[5]

## C

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

ERICKSON, J., dissents.

Justice ERICKSON dissenting:

I would affirm the decisions of the district court and the court of appeals. The district court and the court of appeals, in my view, properly concluded that Martin Marietta's purchase of special tooling and test equipment was exempt from Colorado use tax and Regional Transportation District tax, pursuant to section 39–26–203(1)(b), 16B C.R.S. (1982). The issue in this case is whether property purchased at wholesale, used, and subsequently transferred to the federal government pursuant to contract, is exempt from use tax under the purchase for resale exception.

The Colorado use tax shall not be assessed upon

> the storage, use, or consumption of any taxable personal property purchased for resale in this state, either in its original form or as an ingredient of a manufactured or compounded product, in the regular course of a business.

Section 39–26–203(1)(b).[1] The statute is clear and unambiguous. If property is purchased for resale, then it is not subject to a use tax, regardless of the extent or purpose of its use. Resale occurs when the purchaser of property sells that property to a second purchaser. The definition of resale is not dependent on the primary purpose of a purchase determined by the degree of use by the original purchaser.

Martin Marietta purchased tools and testing equipment from a variety of vendors, then transferred title of this property to the federal government in exchange for compensation. Because Martin Marietta purchased the tools and testing equipment with the purpose of resale, and subsequently transferred title, it is exempt from a Colorado use tax or Regional Transportation District tax.

I respectfully dissent.

---

**5.** Martin also argues that its use of the equipment was pursuant to loans by the United States government and is therefore exempt from the imposition of RTD taxes and use taxes under section 39–26–203(1)(e), 16B C.R.S. (1982). That provision exempts from state use tax "the ... loan of tangible personal property by or to the United States government, the state of Colorado, or its institutions, or its political subdivisions in their governmental capacities only." § 39–26–203(1)(e), 16B C.R.S. (1982). Assuming, *arguendo*, that the contractual arrangements between Martin and its federal agency customers constituted loans for purposes of the

statute, § 39–26–203(1)(e) does not resolve the question of the tax consequences of Martin's use of the equipment subsequent to such loans, as opposed to any tax consequences of any particular loan transaction itself. As we have indicated, the fact that title to the equipment is transferred is not a significant factor in the analysis.

**1.** The majority's requirement that an item purchased for resale must be resold in an unaltered condition and basically unused is in direct conflict with section 39–26–203(1)(b).