**INDUSTRIAL COMMISSION OF the STATE of Colorado, Colorado Division of Employment, Petitioner,**

v.

**MOFFAT COUNTY SCHOOL DISTRICT RE NO. 1, Respondent,**

and

**Patricia Blaine, Interested Party, Petitioner.**

No. 86SC84.

Supreme Court of Colorado, En Banc.

Feb. 17, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dani R. Newsum, Asst. Atty. Gen., Denver, for petitioner.

Thomas C. Thornberry, Craig, for respondent.

Skaalerud & Price, George C. Price, Denver, for Patricia Blaine.

ERICKSON, Justice.

We granted certiorari to review the court of appeals decision in *Moffat County School District RE No. 1 v. Industrial Commission,* 717 P.2d 995 (Colo.App.1985), which set aside an order awarding full unemployment compensation benefits to the claimant, Patricia Blaine. We reverse and remand with directions.

I.

On March 7, 1983, the Moffat County School District RE No. 1 (School District) began dismissal proceedings against Patricia Blaine, a tenured English teacher at Moffat County High School. The proceedings stemmed from Blaine's alleged ap-

proval of, and participation in, a drinking party hosted by student cheerleaders after a basketball tournament in Grand Junction, Colorado. Blaine was the head cheerleading sponsor for Moffat County High School, and she received additional compensation for supervising the cheerleaders at athletic events.

Blaine contested her dismissal, and an adversarial hearing was held on September 19–20, 1983, in accordance with the Teacher Employment, Dismissal, and Tenure Act, sections 22–63–101 to –118, 9 C.R.S. (1973 & 1986 Supp.) (the Act). The Act provides that a tenured teacher may be dismissed on the grounds of "physical or mental disability, incompetency, neglect of duty, immorality, conviction of a felony ..., insubordination, or other good and just cause." § 22–63–116, 9 C.R.S. (1986 Supp.).

At the hearing, Blaine was represented by counsel, testified, presented evidence, and cross-examined witnesses. The evidence presented established that Blaine consumed beer in her motel room while students were present, and that Blaine participated in a party at which beer was served. At the conclusion of the hearing, the hearing officer entered the following findings of fact:

At all times relevant to the charges under consideration March 3, 1983, to March 5, 1983, Patricia Blaine was employed as a teacher with tenure by the School District ... and was granted permanent tenure by notice of personnel action dated May 13, 1982.... Patricia Blaine received additional salary compensation for acting as head cheerleader sponsor by notice of personnel action dated August 30, 1982. Patricia Blaine was performing duties pursuant to said contract on said dates applicable to this matter.

. . . .

Patricia Blaine first learned of the party in the student cheerleaders' room when she entered the room approximately five minutes subsequent to Betty Campbell [a cheerleading co-sponsor] going to the room to investigate the noise coming from the room.

Patricia Blaine [drank] beer while consuming pizza with student cheerleaders in Patricia Blaine's room prior to the party which took place in [a student's] room later on the evening of March 4, 1983, and ... Patricia Blaine did not offer any beer to any of the student cheerleaders while they were in her room consuming pizza, and such student cheerleaders did not, in fact, consume any beer in Patricia Blaine's room at such time.

Patricia Blaine attempted to get the student cheerleaders to stop consuming the beer when she discovered it at the aforesaid party by discussing with them the possible discipline which could be imposed both upon the students and upon Patricia Blaine and Betty Campbell.

Neither Patricia Blaine or Betty Campbell took any action to attempt to stop the student cheerleaders from continuing with consumption of beer at said party subsequent to their discovery that such activity was taking place.

Patricia Blaine did consume approximately one-half bottle of beer with said student cheerleaders while participating in a game at their invitation.

Patricia Blaine was inexperienced in how to handle the situation which presented itself to her with the student cheerleaders consuming beer on a school activity at which she was a co-sponsor, and, further, ... she would in the future take action to stop such activity and report any students participating therein . . . .

Section 22–63–117(8), 9 C.R.S. (1986 Supp.), provides that a hearing officer, after entering findings of fact, must recommend to the board of education employing the teacher that the teacher either be retained or dismissed. The hearing officer in this case recommended that Blaine be retained, but suggested that the board of education for the School District (Board) suspend Blaine for five days, which was

the discipline imposed on Betty Campbell, Blaine's cheerleading co-sponsor.

The Board adopted the hearing officer's findings of fact, but rejected his recommendation and dismissed Blaine for neglect of duty. By statute, the Board could not accept the hearing officer's recommendation that Blaine be suspended for five days. *See* § 22–63–117(10), 9 C.R.S. (1986 Supp.)[1] The court of appeals affirmed Blaine's dismissal in *Blaine v. Moffat County School District RE No. 1,* 709 P.2d 96 (Colo.App. 1985), *cert. granted,* No. 85SC455 (Colo. Jan. 21, 1986).

On July 11, 1984, Blaine filed a claim for unemployment compensation with the Colorado Department of Labor and Employment. Under pertinent provisions of the Colorado Employment Security Act, sections 8–70–101 to 8–82–105, 3B C.R.S. (1986), persons otherwise entitled to full unemployment benefits may be disqualified from receiving benefits if their separation from employment occurred for one of several enumerated reasons, including insubordination, violation of a company rule, improper use of intoxicating beverages, willful neglect or damage to an employer's property or interests, or careless or shoddy work. § 8–73–108(5)(e), 3B C.R.S. (1986). The issue at a hearing on unemployment benefits therefore is whether benefits should be denied because the claimant's separation from employment occurred for any of the reasons enumerated in the statute.

In the unemployment compensation proceeding, Blaine initially alleged that she was dismissed from the School District for "lack of work." She denied that she participated in a party with her students or drank beer at their invitation, and claimed that she was "found innocent" by the hearing officer. The School District contested the claim, and alleged that the circumstances surrounding Blaine's dismissal foreclosed an award of unemployment benefits. On September 13, 1984, a deputy of the Division of Employment and Training (Division) found that Blaine was discharged "due to the publicity involved" and "in the best interest of the employer," and awarded full benefits to Blaine. The deputy's decision was affirmed by an appeals referee, who held that the findings of fact entered by the hearing officer in the dismissal proceeding were binding on Blaine and the School District, but that the Board's rejection of the hearing officer's recommendation made the School District responsible for Blaine's termination. The School District appealed, and the Industrial Commission (Commission) affirmed.

The court of appeals reversed the Commission's decision, holding that the Board's findings and conclusions were binding on the parties under the doctrine of collateral estoppel, and that those findings precluded an award of unemployment compensation.

## II.

■ Collateral estoppel bars relitigation of an issue determined at a prior proceeding if (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding[2]; and (4) the party against whom

1. Section 22–63–117(10) provides:

   The board of education shall review the hearing officer's findings of fact and recommendations, and it shall enter its written order within thirty days after the date of the hearing officer's findings and recommendations. *The board shall take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation....*

   Betty Campbell was not a tenured teacher and dismissal proceedings were not instituted against her. The Board therefore was not bound by section 22–63–117(10) and could impose a five-day suspension upon her.

2. State and federal courts are not in agreement on whether a judgment pending appeal may be given preclusive effect. *See* Annotation, *Judgment as Res Judicata Pending Appeal or Motion For a New Trial, or During the Time Allowed Therefor,* 9 A.L.R.2d 984, 986–87 (1950 & 1985 Later Case Service). The federal rule, which has been accepted and applied by the Colorado Court of Appeals, does not suspend the opera-

the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *People v. Hearty*, 644 P.2d 302, 312 (Colo.1982); *Pomeroy v. Waitkus*, 183 Colo. 344, 350–51, 517 P.2d 396, 399 (1973). Collateral estoppel renders a final decision of an adjudicative body on an issue actually litigated conclusive as to that issue in a subsequent action. *Pomeroy*, 183 Colo. at 350, 517 P.2d at 399.

Principles of collateral estoppel, or issue preclusion, differ from principles of res judicata, or claim preclusion. Collateral estoppel is broader than the doctrine of res judicata, because it applies to a cause of action different from that litigated in the original controversy. Collateral estoppel is narrower, however, because it does not apply to matters that could have been litigated but were not. *Umberfield v. School District No. 11*, 185 Colo. 165, 170, 522 P.2d 730, 732 (1974).

The doctrines of res judicata and collateral estoppel were developed in the context of judicial proceedings, but may be applied to administrative actions as well. *Umberfield*, 185 Colo. at 169, 522 P.2d at 732; Restatement (Second) of Judgments § 83 (1982). The findings and conclusions of an administrative agency may be binding upon the parties in a subsequent proceeding if the agency that rendered the decision acted in a judicial capacity and resolved disputed issues of fact which the parties had an adequate opportunity to litigate. *University of Tennessee v. Elliot*, —— U.S. ——, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Construction & Mining Corp.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16

L.Ed.2d 642 (1966)); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 484 n. 26, 102 S.Ct. 1883, 1899 n. 26, 72 L.Ed.2d 262 (1982). We have held that the decision of a school board in a proceeding to dismiss a tenured teacher pursuant to the Teacher Employment, Dismissal, and Tenure Act is res judicata in a subsequent administrative proceeding before the Colorado Civil Rights Commission. *Umberfield*, 185 Colo. at 173–74, 522 P.2d at 734.[3]

The Commission contends: (1) that the decision of the Board may not be given preclusive effect in a subsequent action for unemployment compensation because the issues in the two proceedings are not identical; (2) that the findings entered by the hearing officer in the dismissal proceeding do not bind the parties because the hearing officer lacked subject matter jurisdiction over unemployment compensation claims; and (3) that the application of collateral estoppel is improper because the Division was not a party to the dismissal proceeding. We agree that collateral estoppel should not be applied in this case because the issues in the two proceedings are not identical, and accordingly reverse the decision of the court of appeals. We do not consider the Commission's remaining contentions.

### III.

The Teacher Employment, Dismissal, and Tenure Act provides a comprehensive procedure for the dismissal of tenured teachers. "Dismissal" under the Act is defined as:

tion of an otherwise final judgment pending appeal unless the case has been removed to the appellate court for *de novo* consideration, or unless the judgment is suspended by a supersedeas order. *See Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580 (7th Cir.1977); *Jefferson County School District No. R–1 v. Industrial Commission*, 698 P.2d 1350, 1352–53 (Colo.App. 1984). *See also Miller v. Lunnon*, 703 P.2d 640 (Colo.App.1985) (an appealed judgment is final for purposes of claim preclusion). Because we hold for other reasons that the doctrine of collateral estoppel does not apply in this case, we do not consider whether Blaine's pending ap-

peal of her dismissal affects the finality of the Board's decision.

3. *Umberfield* has been criticized as an improper case in which to apply the doctrine of res judicata because the decision to dismiss the teacher is made by the board of education, which is the governing body of the school district, and not by a disinterested adjudicator. *See* Comment, *Administrative Law—Res Judicata—Application of Res Judicata to Agencies with Parallel Jurisdiction*, 52 Den.L.J. 595, 605 (1975).

[T]he involuntary termination of employment of a teacher by [the] board [of education of the school district employing the teacher] during the contractual period of time for any reason other than a justifiable decrease in teaching positions or mandatory retirement.

§ 22–63–102(3), 9 C.R.S. (1973). Grounds for dismissal include physical or mental disability, incompetency, neglect of duty, immorality, conviction of a felony, insubordination, or any other good and just cause. § 22–63–116, 9 C.R.S. (1986 Supp.).

■ A teacher who has been dismissed is not necessarily precluded from receiving unemployment benefits. In an unemployment compensation hearing to determine whether a discharged employee has a right to receive benefits, the Commission must be guided by the principle that:

> [U]nemployment insurance is for the benefit of persons unemployed through no fault of their own; and that each eligible individual who is unemployed through no fault of his own shall be entitled to receive a full award of benefits; and that every person has the right to leave any job for any reason, but that the circumstances of his separation shall be considered in determining the amount of benefits he may receive, and that certain acts of individuals are the direct and proximate cause of their unemployment, and such acts may result in such individuals receiving a disqualification.

§ 8–73–108(1)(a), 3B C.R.S. (1986) (emphasis added). *See also Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973); *Andersen v. Industrial Commission,* 167 Colo. 281, 447 P.2d 221 (1968). Under section 8–73–108(5)(e), 3B C.R.S. (1986), the Division must deny benefits to an employee whose discharge was due to one or more of several enumerated causes, including deliberate disobedience of a reasonable instruction of an employer, violation of a company rule that could result in serious damage to the employer's interests, off-the-job use of non-medically prescribed intoxicating beverages to a degree that interferes with job performance, on-the-job use of non-medically prescribed intoxicating beverages, willful neglect of an employer's property or interests, careless or shoddy work, and failure to meet established job performance standards. *See* §§ 8–73–108(5)(e)(VI) to (IX), (XIII), (XV), (XX), 3B C.R.S. (1986). The Division must grant full benefits to an employee who is dismissed for being physically or mentally unable to perform the work or unqualified to perform the work as a result of insufficient educational attainment or inadequate occupational or professional skills. § 8–73–108(4)(j), 3B C.R.S. (1986).

■ Additional factors, therefore, must be considered by the Division before a teacher dismissed in accordance with the Teacher Employment, Dismissal, and Tenure Act may be denied unemployment benefits, and the issues in the two proceedings are not identical. A teacher may be dismissed for "neglect of duty" under section 22–63–116, but neglect of duty alone would not result in a denial of benefits unless the neglect was willful. Similarly, a teacher may be dismissed under the Teacher Employment, Dismissal, and Tenure Act for his or her inability to discharge the duties of the job, but such a dismissal would not bar the teacher's claim for unemployment compensation if the teacher could not perform his or her work due to a mental or physical disability or inadequate professional skills. In this case, that conclusion may be drawn from the hearing officer's finding that Blaine was inexperienced in handling the incident that occurred.

Because the issues in the two proceedings are not identical, the doctrine of collateral estoppel may not be applied in proceedings before the Division on Blaine's claim for unemployment benefits. The case therefore is remanded to the court of appeals with directions to return the case to the Industrial Claim Appeals Office (formerly the Commission) for reconsideration of Blaine's claim for unemployment compensation and for further proceedings con-

sistent with this opinion on the issue of collateral estoppel.[4]

---

**4.** We do not consider whether the hearing officer's findings of fact, as adopted by the Board and affirmed by the court of appeals, may be given evidentiary weight in the unemployment compensation proceeding. *See McDonald v.* *City of West Branch*, 466 U.S. 284, 292–93 n. 13, 104 S.Ct. 1799, 1804 n. 13, 80 L.Ed.2d 302 (1984); Motomura, *Using Judgments as Evidence*, 70 Minn.L.Rev. 979 (1986).