**A.B. HIRSCHFELD PRESS, INC., a Colorado corporation, Plaintiff–Appellant,**

**v.**

**The CITY AND COUNTY OF DENVER; Thomas P. Briggs, in his capacity as Manager of Revenue of the City and County of Denver; and Milo E. Scram, in his capacity as Hearing Officer of the Department of Revenue of the City and County of Denver, Defendants–Appellees.**

**No. 87CA0126.**

Colorado Court of Appeals, Div. III.

Nov. 17, 1988.

Rehearing Denied Feb. 2, 1989.

Certiorari Granted Sept. 18, 1989.

Waller, Mark & Allen, P.C., Denis H. Mark, Denver, for plaintiff-appellant.

Stephen H. Kaplan, City Atty., and Robert F. Strenski, Asst. City Atty., Denver, for defendants-appellees.

CRISWELL, Judge.

Plaintiff, A.B. Hirschfeld Press, Inc., appeals the judgment of the district court that approved a tax assessment by Denver against it under the city's use tax ordinance. It argues that its acquisition of the items involved was not for its own use, but rather was only for resale by it to customers, and that the district court's judgment in another case collaterally estops Denver from contesting this assertion. We affirm.

Plaintiff is a commercial printer that sells to its retail customers various printed items that meet the personalized specifica-

tions of those customers. In order to print the materials ordered by the customer, plaintiff requires certain "prepress materials," consisting of film, negatives, positives, press plates, transparencies, photographs, and color separations. These materials are purchased by the plaintiff and fashioned in the manner required for the printing of the customer's order. While they are not physically used up in this process, they are thereafter useful only to reproduce the same printed items again. The cost to plaintiff of these materials is included within the overall price charged to the customer, but they are not separately invoiced, nor described in any invoice. Nevertheless, the undisputed evidence from plaintiff is that it considers these prepress materials, once the retail customer receives and pays for the printed items ordered, to be the customer's property, and plaintiff will either deliver the prepress materials to the customer or make them available to the customer, without further charge for the materials, in the case of the customer's later re-order of the same printed items.

The Denver use tax ordinance, Denver Revised Municipal Code § 53–96, levies a tax upon the "privilege of storing, using, distributing, or consuming ... any article of tangible personal property, *purchased at retail....*" (emphasis supplied) For purposes of this tax, a "retail sale" is every sale except a "wholesale sale," Denver Revised Municipal Code § 53–95(12), and a "wholesale sale" is, among other things, a sale to a "licensed retail merchant," of whom plaintiff is one, *"for resale."* Denver Revised Municipal Code § 53–95(21) (emphasis supplied). Thus, if a retailer purchases an item of tangible personal property for resale, his later storage, use, distribution, or consumption of that item is not normally subject to the use tax; if his purchase is not for the purpose of resale, his storage, use, distribution, or consumption of the item is a taxable event under the ordinance.

In administrative proceedings conducted under the use tax ordinance, it was determined that plaintiff did not acquire the prepress items for resale and, consequent-ly, was liable for the tax. The district court's judgment approved this administrative conclusion.

## I.

Plaintiff first asserts that the doctrine of collateral estoppel prevents Denver from contesting plaintiff's claim that it acquires the prepress materials for resale. This contention is grounded on a Denver district court decision (*Dixon Paper Co. v. Denver,* No. 86CV0630) which apparently held that a wholesaler of similar prepress materials was not required to charge a sales tax for its sale to commercial printers of these materials because, since the printers intended to resell them, such sales were not sales "at retail" under the Denver ordinance.

On the other hand, citing *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), Denver asserts that the doctrine of collateral estoppel should not be applied against a local governmental unit under these circumstances.

■ We conclude that plaintiff has failed properly to preserve this issue for our review.

Plaintiff did not argue in the trial court that the *Dixon* case had a collateral estoppel effect upon any issue raised in this case. Consequently, neither the district court's opinion, nor the judgment there, nor any other part of the administrative or district court record in that case, was presented to the trial court in this case, and that record is not a part of the record on appeal that is now before us. Thus, our only knowledge of the facts at issue in the *Dixon* case comes from our review of a copy of the findings of fact and conclusions of law in that proceeding that plaintiff attached to its brief.

Plaintiff argues that it was excused from raising this issue in the trial court. Although the judgment in the *Dixon* case was rendered before the judgment in the case at issue, plaintiff argues that it was not made "final" while this case was pending before the trial court because the time

for appealing that judgment had not run prior to the time judgment was announced in this case. Thus, plaintiff argues it was not obligated to refer to the *Dixon* case until that judgment became final. We disagree.

The document attached to the plaintiff's brief reflects that the *Dixon* case judgment was announced on August 14, 1986. The judgment in this case was not rendered until December 12, 1986. Thus, without resorting to the *Dixon* case record, it is impossible to ascertain whether there still existed a right to appeal that judgment as of the date that the judgment here was announced. That consideration is irrelevant, however.

 In a series of recent cases, this court has determined that a trial court's or administrative agency's decision may have a preclusive effect for res judicata or collateral estoppel purposes even though an appeal of that decision is pending. *Bunnett v. Smallwood*, 768 P.2d 736 (Colo.App. 1988); *Miller v. Lunnon*, 703 P.2d 640 (Colo.App.1985); *Jefferson County School District v. Industrial Commission*, 698 P.2d 1350 (Colo.App.1984).

Moreover, the question whether the same issue is involved in two cases for purposes of collateral estoppel may well involve a question of fact, *see Fehringer v. F.H. Martin Drug Co.*, 56 Colo. 445, 138 P. 1007 (1914), and may require a review of the record in the former case. *See McLaughlin v. Reichenbach*, 52 Colo. 437, 122 P. 47 (1912). Thus, unless the issue of collateral estoppel is presented at the trial level, the question cannot be reviewed on appeal. *Travelers Indemnity Co. v. United States*, 382 F.2d 103 (10th Cir.1967).

## II.

Plaintiff claims that it is not liable for the payment of the Denver use tax because the prepress materials are not "purchased at retail" by it. It asserts, rather, that, because the cost of these materials is included in the price charged its customers for the printed items delivered to the customer, and because title to these materials is ultimately transferred to the customer,

the materials are purchased for "resale." Thus, plaintiff says that its purchase is one at "wholesale" and the subsequent storage and use of the materials are not subject to the tax. We disagree.

 The Colorado use tax statute, like the Denver ordinance, requires that the purchase be "at retail" in order for the later use to be taxable. Section 39–26–202, C.R.S. (1988 Cum.Supp.). Likewise, the distinction between a retail sale and a wholesale sale is whether the item is purchased for "resale." Section 39–26–102(9) and (19), C.R.S. (1982 Repl.Vol. 16B). Thus, prior decisions construing or applying these statutory terms are helpful in construing the ordinance here. *See People v. Wahl*, 716 P.2d 123 (Colo.1986); *Sterling Recreation Organization Co. v. Segal*, 537 F.Supp. 1024 (D.Colo.1982).

 Under the statute, the test for taxability is whether the item is purchased primarily for resale or whether its resale is merely incidental to the primary purpose of the later transaction. Thus, the paint and electrical wiring used by a contractor are not purchased by that contractor for resale, even though the purchaser of the structure ultimately receives title to these items. *Craftsman Painters & Decorators, Inc. v. Carpenter*, 111 Colo. 1, 137 P.2d 414 (1942). Likewise, although the buttons and cloth used by a cleaner to repair garments cleaned by him become the property of the customer, the "sale" of such items is merely "incidental" to the rendering of the cleaning service; hence, their acquisition is not primarily for resale purposes. *Carpenter v. Carman Distributing Co.*, 111 Colo. 566, 144 P.2d 770 (1943). On the other hand, if the acquisition is made for the primary purpose of resale, the fact that the purchaser may itself make temporary use of the commodity before selling it does not render such use taxable. *C.F. & I. Steel Corp. v. Charnes*, 637 P.2d 324 (Colo.1981).

Consistent with this "primary versus incidental purpose" concept adopted by the Colorado Supreme Court, the New York courts have held that a printer is liable for a use tax for dies used for cutting, mount-

ing, and finishing work, and for mechanical art work, used to produce printed advertisements, even though the materials later become the property of the printer's customer. *Cut-outs, Inc. v. State Tax Commission*, 85 A.D.2d 838, 446 N.Y.S.2d 436 (1981); *Laux Advertising v. Tully*, 67 A.D.2d 1066, 414 N.Y.S.2d 53 (1979). The courts in these decisions have noted that the primary purpose of the printer in acquiring these materials is to produce a final product to be sold to the customer. Their "primary utility," which is to produce such a product, is "exhausted" prior to the transfer of title to the customer, except to the extent that the customer might re-order the same product. Thus, any "resale" of the items to the customer is "purely incidental" to the printer's primary purpose.

In this case, the administrative record supports the conclusion that the prepress materials were not acquired by plaintiff for the primary purpose of reselling them. They were acquired in order to allow plaintiff to produce a product ordered by its customer. Absent a later re-order by the customer of the same product, their utility was entirely consumed by plaintiff; their later transfer to the customer was merely incidental to the service rendered by plaintiff. *See Carpenter v. Carman Distributing Co., supra.* Thus, the district court properly approved the administrative decision that plaintiff was liable to pay a use tax for its use of these materials.

Judgment affirmed.

VAN CISE and STERNBERG, JJ., concur.