In re Geoffrey RANTZ, Plaintiff,

v.

Ann P. KAUFMAN and Rick B. Levinson, Defendants.

No. 04SA273.

Supreme Court of Colorado, En Banc.

Feb. 28, 2005.

McConnell, Siderius, Fleischner, Houghtaling & Craigmile, L.L.C., Michael T. McConnell, Meghan E. Pound, Englewood, for Petitioners.

Edward J. LaBarre, Colorado Springs, for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this original proceeding, two attorneys, Ann Kaufman and Rick Levinson, ask us to determine whether a former client, whom they had represented in a criminal case, must obtain postconviction relief before filing a malpractice claim against them. We decide that obtaining postconviction relief is not a prerequisite to filing suit. If postconviction relief has been sought and denied on the merits, however, the court's denial of relief may have a preclusive effect on the malpractice suit under appropriate circumstances. Here, the order of the postconviction court denying Geoffrey Rantz's Crim. P. 35(c) motion is pending on appeal and is not final for purposes of issue preclusion. Accordingly, the findings of the postconviction court do not presently preclude Rantz from making a legal malpractice claim against Kaufman and Levinson. Consequently, the trial court properly refused to dismiss his suit and acted within its discretion when it stayed the case pending resolution of the appeal.

## II. Facts and Procedural History

Rantz was convicted of sexually assaulting two boys and sentenced to sixty-six years in the Department of Corrections. Kaufman and Levinson were retained as counsel by Rantz and represented him at trial.

Following his conviction, Rantz obtained new counsel and filed a Crim. P. 35(c) motion for postconviction relief and a motion for a new trial based on ineffective assistance of counsel. Rantz claimed he had wanted a particular witness to be called at trial to corroborate his version of events and to rebut the testimony of the alleged victims. Contrary to his alleged desires, Kaufman and Levinson did not call the witness. The crux of Rantz's Crim. P. 35(c) motion was that he was deprived of his right to effective assistance of counsel because Kaufman refused to call the witness due to a conflict of interest. According to Rantz, the alleged conflict of interest arose because the witness, who was a minor, had contacted Kaufman while he was a runaway, but she had not reported this contact to the authorities, and in fact had falsely represented to the court that no contact had occurred. Rantz asserted that Kaufman prevented the witness from testifying in order to conceal her contact with him from the court and to protect herself from being implicated in federal kidnapping charges. In his motion, Rantz also contended that he would have testified himself, had he known the witness was not going to be called.

After a hearing, the postconviction court denied Rantz's Crim. P. 35(c) motion, and made extensive findings of fact. Based on the record and testimony presented at the hearing, the court found that (1) both attorneys were "very well prepared and very thorough throughout their representation of the defendant;" (2) Kaufman was not acting under any conflict of interest; (3) neither attorney was ineffective; (4) the decision not to call the witness was a justified strategy decision; and (5) Rantz voluntarily and knowingly waived his right to testify. Accordingly, the court concluded that Rantz had failed to prove his counsel's performance was constitutionally deficient. Rantz appealed the court's order to the court of appeals and the appeal is presently pending.

Prior to the hearing on his Crim. P. 35(c) motion, Rantz filed a malpractice suit against Kaufman and Levinson alleging negligence, breach of fiduciary duty, deceit, and outrageous conduct. In his complaint, Rantz repeated many of the allegations from his motion for postconviction relief, claiming that Kaufman and Levinson failed to withdraw from representing Rantz despite a conflict of interest, failed to present testimony from a witness due to this conflict, and that these failures ultimately led to Rantz's conviction.

Kaufman and Levinson moved to dismiss Rantz's malpractice complaint because Rantz failed to obtain postconviction relief and therefore could not state a claim. The district court denied the motion to dismiss, reasoning that our recent decision in *Morrison v. Goff,* 91 P.3d 1050 (Colo.2004), "would seem to indicate that a person does not have to first obtain post conviction relief as a precondition of filing." The court further stated that the postconviction court's denial on the merits of a claim for ineffective assistance of counsel "would be binding in a subsequent civil malpractice." However, the court declined to dismiss Rantz's complaint on those grounds, indicating that the postconviction court's determination of Rantz's Crim. P. 35(c) motion may not be final. Upon motion from Kaufman and Levinson, the court stayed the malpractice proceedings until Rantz either obtained or was finally denied postconviction relief.

Subsequently, Kaufman and Levinson petitioned this court for relief pursuant to C.A.R. 21. We issued a rule to show cause why Kaufman and Levinson's motion to dismiss Rantz's malpractice suit should not be granted. Because we find that postconviction relief is not a prerequisite to filing, and that lack of a final judgment on the Crim. P. 35(c) motion prevents issue preclusion from applying to Rantz's malpractice claim, we now discharge that rule. The trial court properly applied *Morrison* when it stayed the malpractice case pending resolution of the Crim. P. 35(c) case.

### III. Analysis

Kaufman and Levinson invite this court to find either (1) that a former client must obtain postconviction relief in order to make out a legal malpractice claim against his or her criminal defense attorney; or (2) that the denial of Rantz's Crim. P. 35(c) motion is a final judgment for purposes of precluding Rantz from pursuing his malpractice claim.

We reject both arguments. Under the "two-track" system adopted in *Morrison,* achieving postconviction relief is not a precondition to filing a legal malpractice claim against a criminal defense attorney. Denial of a Crim. P. 35(c) motion can preclude relitigation of certain factual or legal issues decided in the criminal proceeding if all the elements for issue preclusion are met. One of the elements of issue preclusion, however, is that there must be a final judgment on the merits in the prior proceeding. Because the order denying Rantz postconviction relief is still pending on appeal, it does not constitute a final judgment for purposes of issue preclusion.

### A. Prior Postconviction Relief

■ To prevail on a claim for legal malpractice in Colorado, the plaintiff must show that (1) the attorney owed a duty of care to the plaintiff, (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the plaintiff. *Stone v. Satriana,* 41 P.3d 705, 712 (Colo.2002). Kaufman and Levinson urge us to find that, in cases where a former client is suing his or her criminal defense attorney for malprac-

tice, the client is required to show that he or she has obtained postconviction relief as an additional element.

The idea that a former client must obtain postconviction relief before bringing a malpractice suit against his or her criminal defense attorney appears to have had its genesis in a 1974 law review article. Otto M. Kaus & Ronald E. Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"*, 21 U.C.L.A.L.Rev. 1191 (1974); *see Duncan v. Campbell*, 123 N.M. 181, 936 P.2d 863, 866 (N.M.App.1997). Since then, many jurisdictions that have considered the question have adopted some form of postconviction relief as a prerequisite to maintaining the malpractice action. *See, e.g., Shaw v. State*, 816 P.2d 1358 (Alaska 1991); *Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670 (2001); *Steele v. Kehoe*, 747 So.2d 931 (Fla.1999); *Levine v. Kling*, 123 F.3d 580 (7th Cir.1997) (applying Illinois law); *Trobaugh v. Sondag*, 668 N.W.2d 577 (Iowa 2003); *Canaan v. Bartee*, 276 Kan. 116, 72 P.3d 911 (2003); *Noske v. Friedberg*, 670 N.W.2d 740 (Minn.2003); *Morgano v. Smith*, 110 Nev. 1025, 879 P.2d 735 (1994); *Carmel v. Lunney*, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987); *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556 (1993); *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108 (1993); *Gibson v. Trant*, 58 S.W.3d 103 (Tenn.2001); *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Tex.1995); *Adkins v. Dixon*, 253 Va. 275, 482 S.E.2d 797 (1997). The requirement is sometimes referred to as the "exoneration rule." *See, e.g., Canaan*, 72 P.3d at 914; *Gibson*, 58 S.W.3d at 109.

Several other jurisdictions have directly or impliedly declined to make prior postconviction relief a requirement for suit, although some insist on an affirmative demonstration of innocence of the underlying crime from the former client. *See, e.g., Mylar v. Wilkinson*, 435 So.2d 1237 (Ala.1983); *McCord v. Bailey*, 636 F.2d 606 (D.C.1980); *Glenn v. Aiken*, 409 Mass. 699, 569 N.E.2d 783 (1991) (former client has burden of proving innocence of underlying charge); *Gebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900 (1994); *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo.1977); *Ereth v. Cascade County*, 318

Mont. 355, 81 P.3d 463 (2003); *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000) (requires establishment of "actual innocence"); *Mahoney v. Shaheen, Cappiello, Stein & Gordon*, 143 N.H. 491, 727 A.2d 996 (1999) (criminal malpractice action will fail if claimant does not allege and prove actual innocence); *Duncan*, 936 P.2d at 865 (N.M.App.1997); *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989). Most jurisdictions cite various public policy reasons to justify their decision either to adopt or reject the exoneration rule.

Those jurisdictions that adopt the exoneration rule often also assert that, absent postconviction relief, the former client cannot, as a matter of law, establish either the causation or damages element necessary to sustain a malpractice claim. *See, e.g., Stevens*, 851 P.2d at 566 (exoneration required to establish damages); *Peeler*, 909 S.W.2d at 497–98 (exoneration required to show causation). In *Stevens*, the Oregon Supreme Court reasoned that "what constitutes legally cognizable harm is a policy choice." 851 P.2d at 560. Reviewing the overall "legislative scheme" for procedural criminal law in Oregon, the court determined that it was the policy of the state "to treat any person who has been convicted of any criminal offense as validly convicted unless and until the person's conviction has been reversed." *Id.* at 561. Because persons convicted of crimes are already afforded many protections and opportunities for relief from negligence of counsel, the court concluded that it would be "inappropriate to treat victims of alleged negligence by defense counsel as having been 'harmed,'" unless they had been exonerated. *Id.* at 562.

Jurisdictions and commentators disagreeing that prior exoneration should be a precondition to suit, dismiss this argument as a legal fiction. *See, e.g., Gebhardt*, 510 N.W.2d at 906 n. 13; *Duncan*, 936 P.2d at 867–68; *Stevens* at 566 (Unis, J., concurring); *cf. Coscia*, 108 Cal.Rptr.2d 471, 25 P.3d at 680 (declining "to adopt the legal fiction that an innocent person convicted of a crime suffered no actual injury until he or she was exonerated through postconviction relief," but adopting exoneration rule). The legal malpractice

plaintiff in *Stevens* pleaded guilty on the advice of his attorney and was exonerated when another person confessed to the crimes. Under the *Stevens* majority's theory of damages, had the actual perpetrator not come forward, the plaintiff would not have been harmed by the wrongful conviction. Reacting to the absurd result created by the majority's "no relief/no harm" rule, the specially concurring justice noted that persons

> convicted of a crime will be astonished to learn that, even if their lawyers' negligence resulted in their being wrongly convicted and imprisoned, they were not harmed when they were wrongly convicted and imprisoned, but, rather, that they are harmed only if and when they are exonerated.

*Stevens*, 851 P.2d at 566 (Unis, J., concurring). The Michigan Supreme Court also rejected the related notion that damages were not final until exoneration, stating that "harm is established not by the finality of the damages, but by the occurrence of an identifiable and appreciable loss." *Gebhardt*, 510 N.W.2d at 904.

Putting any analytical flaws aside, our decision in *Morrison* necessarily rejected the *Stevens* majority's construction of harm in malpractice suits between former clients and their criminal defense attorneys. In *Morrison*, we decided that the statute of limitations for a criminal defendant's malpractice action is not tolled while he or she pursues direct appeal or postconviction relief. 91 P.3d at 1051. The General Assembly in Colorado has adopted the discovery rule for determining when a cause of action accrues for statute of limitations purposes. § 13–80–108(1), C.R.S. (2004). Applying the discovery rule to legal malpractice actions, we concluded that the claim accrues when a plaintiff learns "facts that would put a reasonable person on notice of the general nature of *damage* and that the *damage* was caused by the wrongful conduct of an attorney." *Morrison*, 91 P.3d at 1053 (quoting *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo.App.1998)) (emphasis added).

■ Under the "two-track" approach adopted in *Morrison*, "the criminal defendant must file a malpractice claim within the spec-

ified period after the defendant learns or should have learned of the injury and its cause." *Id.* at 1055. The criminal defendant may then seek a stay in the malpractice suit, which the trial court has the discretion to grant or deny, until all appellate and postconviction matters concerning the criminal case are resolved. *Id.* Implicit in this approach and Colorado's definition of accrual for legal malpractice claims is the notion that the criminal defendant can suffer damages prior to exoneration. If a criminal defendant were unable to suffer damages before exoneration, then the claim could not accrue before postconviction proceedings are concluded. However, *Morrison* clearly holds to the contrary. As a result, we reject the notion that a former client cannot establish the damage element necessary to sustain a malpractice action against his or her criminal defense attorney unless he or she first obtains postconviction relief.

We also reject the concept that, as a matter of law, a criminal defendant cannot establish the causation element of a malpractice claim unless he or she has been exonerated through postconviction relief. In order to demonstrate causation in a legal malpractice case, the client must prove the "case within a case," meaning he or she must show that "the claim underlying the malpractice action should have been successful if the attorney had acted in accordance with his or her duties." *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo.1999). It may be that in some or even the majority of legal malpractice suits against criminal defense attorneys, their former clients will not be able to prove that the outcome of the criminal case would have been successful unless they prevail in some manner in appellate or postconviction proceedings. Causation should be evaluated on the facts of a particular case, and we discern no reason for erecting a permanent barrier to malpractice claims with a blanket rule. *See Krahn*, 538 N.E.2d at 1062 ("We reject the suggestion that a proximate cause analysis can be eliminated and replaced by a rule of thumb based on whether the malpractice plaintiff has succeeded in overturning the underlying criminal conviction.").

Having determined that the existing elements of a malpractice claim do not dictate that a criminal defendant must obtain postconviction relief before he or she can maintain suit, we now consider whether other reasons compel adoption of such a requirement. We are not persuaded by the policy arguments advanced by jurisdictions that impose an exoneration requirement. Several of the justifications offered for the exoneration rule, such as promoting judicial economy,[1] providing a convenient date for triggering the statute of limitations,[2] and protecting criminal defendants,[3] are satisfied or rendered moot by the "two-track" approach adopted in *Morrison.*

Affording the trial court the discretion to stay the civil suit while the criminal proceedings are completed serves the interests of judicial economy in the same manner that the exoneration rule does. *See Morrison,* 91 P.3d at 1056; *Gebhardt,* 510 N.W.2d at 907. Those jurisdictions citing judicial economy as a reason for requiring postconviction relief prior to filing a malpractice claim argue that such a requirement would eliminate frivolous suits because issue preclusion would serve as a bar in the event that the criminal defendant was denied postconviction relief. *Shaw,* 816 P.2d at 1361. Issue preclusion can serve in precisely the same manner without making prior postconviction relief a requirement, either through operation of the stay or otherwise. The requirement that the criminal defendant prove the "case within the case" is also a heavy burden that will screen out frivolous claims. Furthermore, the judicial economy consideration cuts both ways. The exoneration rule forces the criminal defen-

dant to file two suits, because he or she cannot go forward on a malpractice suit without attacking the criminal conviction. Without a prior exoneration requirement, the criminal defendant may decide to file the civil suit only, thereby conserving judicial resources.[4]

Similarly, the rights of criminal defendants are adequately protected by the *Morrison* "two-track" approach. Imposing a further requirement of obtaining prior postconviction relief is therefore unnecessary. With the civil suit stayed, the criminal defendant is able to pursue postconviction relief free from distraction or the fear that the former attorney will reveal information damaging to the criminal proceedings. *See Morrison,* 91 P.3d at 1056; *Gebhardt* 510 N.W.2d at 907. Finally, the statute of limitations issue was squarely presented and addressed in *Morrison* and a bright line rule was rejected. 91 P.3d at 1056.

Many jurisdictions that have adopted the exoneration rule also point to the policy of ensuring that criminals do not profit from their criminal conduct as justification. *See, e.g., Coscia,* 25 P.3d at 673; *Gibson,* 58 S.W.3d at 110; *Peeler,* 909 S.W.2d at 498. This argument bears similarity to the idea that a criminal defendant cannot demonstrate harm or causation unless and until formal exoneration has been achieved. Like those proposed barriers to maintaining a malpractice suit, preventing an individual from profiting from criminal conduct is better addressed at the individual case level. Before recovering damages, a criminal defendant will have to demonstrate that the negli-

---

1. *See, e.g., Steele,* 747 So.2d at 933 ("requiring appellate or postconviction relief prerequisite to a malpractice claim will preserve judicial economy by avoiding the relitigation of supposedly settled matters"); *Trobaugh,* 668 N.W.2d at 583 (requiring prior postconviction relief avoids multiple proceedings related to the same factual and procedural issues).

2. *See, e.g., Shaw,* 816 P.2d at 1361.

3. *See, e.g., id.* (noting concern that attorneys might produce privileged evidence harmful to defendant's pursuit of postconviction relief in the course of defending against malpractice suit and "the desirability of allowing a criminal defendant

with a valid postconviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim").

4. This is the situation we encountered in the companion case also decided today, *Smith v. Truman,* —— P.3d ——, 2005 WL 452283 (Colo. 2005). In *Smith,* the criminal defendant, Dominic Smith, had been paroled from the Department of Corrections and wished to pursue only a civil malpractice suit against his former criminal defense attorney. A successful Crim. P. 35(c) motion could have resulted in a new trial and thus the possibility of re-incarceration for Smith. Adoption of the exoneration rule would have forced Smith to maintain two suits.

gence of his or her attorney caused legally cognizable harm. A criminal defendant who prevails in a malpractice action is receiving compensation for an injury suffered, in the form of time spent in prison or the burden of a criminal record, not a windfall.

Policy reasons do, however, persuade us that obtaining prior postconviction relief should not be an element of legal malpractice claims against criminal defense attorneys. We see no reason why criminal defense lawyers should be afforded greater protection against liability for negligence than other professionals. Jurisdictions adopting the exoneration rule sometimes justify the disparate treatment of malpractice claims brought against civil and criminal attorneys, or against criminal attorneys and other licensed professionals, by arguing that criminal malpractice claims are unique due to the postconviction remedies available to criminal defendants. *See, e.g., Morgano,* 879 P.2d at 738 n. 3; *Gibson,* 58 S.W.3d at 116. Postconviction remedies exist to protect the constitutional rights of criminal defendants, not to protect negligent defense attorneys. Accordingly, the availability of such remedies should not serve as an additional shield for attorneys who practice a particular form of law. Physicians who practice a particular type of medicine may be able to persuasively argue that their practice is unique, but they would still be subject to the same set of malpractice elements as other physicians.

Even without considering policy, our decision in *Morrison* strongly suggests that prevailing in postconviction proceedings is not a prerequisite to maintaining a malpractice suit in Colorado. In *Morrison* we held that:

> In the event that a *particular* criminal defendant must obtain appellate relief to avoid dismissal of a pending malpractice action, or if proceeding with a malpractice action would jeopardize the criminal defendant's rights, the trial court *may* stay the malpractice action pending resolution of the criminal case.

*Id.* at 1058 (emphasis added). The language used in the opinion and the system it set up indicates that there was no blanket rule requiring every criminal defendant to first obtain postconviction relief. Rather than directing the trial court to stay all malpractice suits until the outcome of postconviction proceedings was known, we gave the trial court discretion to do so. We recognized that certain cases may present factual situations necessitating a final determination of postconviction relief, but that not all would. Because of this recognition, we chose flexibility over a bright line rule.

Today, we make the same choice and hold that former clients are not required to obtain postconviction relief before bringing a malpractice action against their criminal defense attorneys. While some criminal defendants may not be able to establish causation without obtaining such relief, we find that this element of the claim should be addressed individually rather than through adoption of the exoneration rule.

## B. Issue preclusion

■ Regardless of whether we find postconviction relief to be a prerequisite to making a malpractice claim, Kaufman and Levinson ask us to find that denial of a prior Crim. P. 35(c) motion is a final judgment for purposes of precluding such a claim. We hold that, under appropriate circumstances, the denial of a Crim. P. 35(c) motion can serve to prevent parties from relitigating certain issues.

■ The doctrine of issue preclusion, sometimes referred to as collateral estoppel, provides that a court's final decision on an issue actually litigated and decided in a previous suit is conclusive of that issue in a subsequent suit. *Carpenter v. Young,* 773 P.2d 561, 565 (Colo.1989). Preclusion can also occur under the theory of res judicata, or claim preclusion. Claim preclusion "bars relitigation of claims or issues which were or could have been raised in a prior suit between the same parties." *Id.* at 565 n. 5. Issue preclusion, on the other hand, can prevent "relitigation of a factual or legal matter that was previously litigated and decided," in an earlier matter. *Id.* Thus, "[issue preclusion] is broader than [claim preclusion] since it applies to claims for relief different from those litigated in the first action, but narrower in that it only applies to issues actually

litigated." *City and County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo. 1991). Here, Kaufman and Levinson are asserting that key factual issues alleged by Rantz in his malpractice complaint were already resolved against him in the order denying his Crim. P. 35(c) motion for ineffective assistance of counsel. Thus, we analyze this argument under the doctrine of issue preclusion.

■ Application of issue preclusion is "intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Bebo Construction*, 990 P.2d at 84 (internal citations omitted). In Colorado, issue preclusion bars relitigation of an issue if:

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Id.*, at 84–85.

■ Rantz contends that the standards and presumptions applied to an ineffective assistance of counsel claim prohibit courts in all cases from finding that a determination of an identical issue has been made or that the defendant had a full and fair opportunity to litigate, thereby rendering the doctrine of issue preclusion inapplicable to a subsequent malpractice proceeding. In addition, he alleges that the postconviction court's determination is not final in his case because it is pending on appeal. We reject the former contention but find the judgment is not final.

**1. Identical Issues**

Colorado adopted the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standards for determining ineffective assistance of counsel in *People v. Garcia*, 815 P.2d 937, 940–41 (Colo.1991). To prevail on a claim of ineffective assistance

of counsel, the criminal defendant must show that (1) counsel's performance was constitutionally deficient; and (2) the deficient performance prejudiced the case. *Garcia*, 815 P.2d at 940. The standard for constitutionally deficient performance asks "whether the attorney's performance is within the range of competence demanded of attorneys in criminal cases under prevailing professional norms." *Id.* at 941. The standard for breach in a legal malpractice suit in a malpractice action asks whether the attorney employed "that degree of knowledge, skill and judgment ordinarily possessed by members of the legal profession in carrying out services for his client." *Stone*, 41 P.3d at 712. Under these standards, the inquiry undertaken in both cases is identical and focuses on what ordinary members of the legal profession would have done at the time the action was taken. *See id.; Garcia* 815 P.2d at 941.

Similarly, the standard for demonstrating prejudice in an ineffective assistance of counsel claim and the standard for establishing causation in a malpractice claim involve equivalent analyses. To prove prejudice in an ineffective assistance claim, the criminal defendant must show that "there is a reasonable probability that but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Garcia*, 815 P.2d at 941 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). This demonstration does not differ significantly from the one the criminal defendant would have to make to establish causation in a legal malpractice action, where the criminal defendant would have to show that "the claim underlying the malpractice action should have been successful if the attorney acted in accordance with his or her duties." *Bebo Construction*, 990 P.2d at 83. In both cases, the criminal defendant must prove that had the attorney behaved non-negligently the outcome of the case would have been better.

Rantz asserts that any appearance of similarity between the standards is destroyed by the presumption of competence that must be applied to the attorney's performance when evaluating an ineffective assistance of counsel claim under *Strickland*. *Garcia*, 815 P.2d at

941. The presumption requires that a court be "highly deferential" in reviewing counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Other jurisdictions that have adopted the *Strickland* test and examined this issue have held that the standard for proving ineffective assistance of counsel in a criminal proceeding is equivalent to the standard for proving legal malpractice in a civil proceeding without addressing the effect of the presumption. *See, e.g., Sanders v. Malik,* 711 A.2d 32, 34 (Del.1998); *Barrow v. Pritchard,* 235 Mich.App. 478, 597 N.W.2d 853, 857 (1999), *cert. denied,* 461 Mich. 966, 607 N.W.2d 728 (2000); *Krahn,* 538 N.E.2d at 1062, n. 8. *But see Kerkman v. Varnum, Riddering Schmidt and Howlett,* 519 N.W.2d 862, 864 (Mich.1994) (pointing to the "daunting standard for showing ineffective assistance," stating that "it cannot properly be said that a convicted person who does not prevail in an ineffective assistance case would necessarily be unable to show prejudice in a legal malpractice case"). The effect of the presumption of competence on issue preclusion analysis will depend on the particular issue a party is attempting to preclude from relitigation.

Rantz contends that both the first and fourth prongs of issue preclusion analysis are affected by the presumption of competence that attaches to an attorney's performance in an ineffective assistance of counsel claim. The first prong requires that the issue to be precluded must be identical to the issue that was actually and necessarily decided in the prior action. *Michaelson v. Michaelson,* 884 P.2d 695, 702 (Colo.1994). In many instances, this inquiry would be unaffected by the presumption of competence that attaches to an attorney's performance in an ineffective assistance of counsel claim. This is particularly true for factual findings. For example, Kaufman and Levinson may wish to assert that the postconviction court's finding that Kaufman did not decline to call the witness due to a conflict of interest precludes Rantz from relitigating the issue of Kaufman's motives. The postconviction court's determination of that fact was not affected by the presumption of competence and thus can be considered identical to the issue that the jury in the malpractice proceeding would be asked to decide. By contrast, the postconviction court's conclusion that Kaufman and Levinson's performance was not deficient is influenced by the presumption of competence and cannot be said to be identical to the determination the jury would be asked to make in the malpractice proceeding, where the presumption would not apply.

The extent to which the issues are identical also affects the fourth prong of issue preclusion: whether the defendant has had a full and fair opportunity to litigate. In *Bebo Construction,* identity of the issues was listed as one of three factors determinative of whether there was a full and fair opportunity to litigate. 990 P.2d at 87. Accordingly, the question of whether this prong can be satisfied will also depend on the specific issue a party seeks to bar from relitigation.

Comparison of the standard Colorado employs in an ineffective assistance of counsel case to that used in a legal malpractice case reveals primarily semantic differences. Enough similarity exists to conclude that an issue decided in the criminal proceeding could be identical to an issue asserted in the civil proceeding. Likewise, the equivalency of the standards in the two types of suits prevents a criminal defendant from arguing that, in all instances, he did not have "a full and fair opportunity to litigate" the issue in the prior criminal proceeding. *Id.* at 85. The *Strickland* presumption of competence may affect the determination of particular issues in an ineffective assistance of counsel claim so that it cannot be said that they are identical or that the defendant had a full and fair opportunity to litigate the issues. Trial courts will have to decide whether issue preclusion applies based on the individual issues presented for preclusion. If the actual factual or legal matter at issue in the civil proceeding is identical to one raised and decided in the criminal proceeding, issue preclusion can apply.

### 2. Finality

Rantz also submits that the third element necessary for use of issue preclusion in his

case is missing. Because he has appealed the denial of his Crim. P. 35(c) motion to the court of appeals, Rantz protests that the judgment is not final.

We have never directly addressed whether a judgment pending on appeal is final for purposes of applying issue preclusion. In a decision resolving other issues, we noted that the state and federal courts are not in agreement on whether judgments pending on appeal may be given preclusive effect. *Industrial Comm'n v. Moffat County School Dist.*, 732 P.2d 616, 620 n. 2 (Colo.1987). The Colorado Court of Appeals, however, has determined in a series of cases that "a trial court's or administrative agency's decision may have preclusive effect for [claim preclusion] or [issue preclusion] purposes even though an appeal of the decision is still pending." *A.B. Hirschfeld Press, Inc. v. City and County of Denver*, 779 P.2d 1356, 1359 (Colo. App.1989); *see also Bunnett v. Smallwood*, 768 P.2d 736, 740 (Colo.App.1988), *rev'd in part on other grounds*, 793 P.2d 157 (Colo. 1990); *Miller v. Lunnon*, 703 P.2d 640, 643 (Colo.App.1985); *Jefferson County School Dist. v. Industrial Comm'n*, 698 P.2d 1350, 1353 (Colo.App.1984). These decisions comport with the federal rule that a pending appeal "does not suspend the operation of an otherwise final judgment" unless appellate review is *de novo*. *Moffat* 732 P.2d at 620 n. 2; *see also Stone v. Dep't of Aviation*, 296 F.Supp.2d 1243, 1251–52 (D.Colo.2003). Three times we have noted without disapproval the existence of this line of cases, though we have never been provided with occasion to affirm or reject them. *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1098 n. 5 (Colo.1996); *Carpenter*, 773 P.2d at 566; *Moffat*, 732 P.2d at 620 n. 2.

■ Having before us a case that squarely presents the issue of whether a pending appeal prevents a prior judgment from constituting a final judgment for purposes of issue preclusion, we find that the *Carpenter* definition of finality prevents us from according such judgments preclusive effect. In *Car-*

*penter*, we decided that C.R.C.P. 54(b) certification was not necessary for a judgment to be deemed final for issue preclusion purposes. 773 P.2d at 568. Addressing the definition of finality, we held that "in order to be accorded preclusive effect, a judgment must be 'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and *there was an opportunity for review.*" *Id.* (emphasis added); Restatement (Second) of Judgments § 13, comment g (1983). The summary judgment at issue in *Carpenter* had originally been subject to review, but the parties waived the right to that review by entering into a settlement agreement. Consequently, applying the rule announced in that decision, the *Carpenter* court was able to conclude the judgment was sufficiently final.

■ Applying the factors from *Carpenter* to the present case, we cannot conclude that the judgment of the postconviction court on Rantz's Crim. P. 35(c) motion is "sufficiently firm" to be accorded preclusive effect. Although the order of the postconviction court was not tentative, but rather accompanied by definite findings of fact, and Rantz had ample opportunity to be heard on the motion, review of the judgment has not been completed. *Carpenter* requires an opportunity for review before a judgment can be considered final for purposes of issue preclusion. Pronouncing a judgment to be final while it is still pending on appeal would negate that requirement.

The announcement in *Carpenter* that there must be opportunity for review before a judgment can be accorded preclusive effect for purposes of issue preclusion effectively overruled the prior court of appeals cases to the extent they held otherwise.[5] We are deciding today that, for the purposes of issue preclusion, a judgment that is still pending on appeal is not final, and take this opportunity to expressly overrule the line of court of appeals cases to the extent they hold to the contrary.

---

5. *A.B. Hirschfeld*, which stated that a trial court's decision could have preclusive effect for purposes of issue preclusion even though the decision was still pending on appeal, was decided after *Carpenter*. We affirmed *A.B. Hirschfeld* on appeal, 806 P.2d 917 (Colo.1991), but did not comment on this issue as the court of appeals below had refused to consider the plaintiff's issue preclusion claim as it had not been preserved for appeal. 779 P.2d at 1359.

## IV. Conclusion

Because prior postconviction relief is not a requirement to maintain suit, the denial of Rantz's Crim. P. 35(c) motion for ineffective assistance of counsel alone does not prevent Rantz from stating a malpractice claim. Although we hold that the doctrine of issue preclusion can be used under appropriate circumstances to prevent a criminal defendant from relitigating issues that have been decided against him or her in a Crim. P. 35(c) motion in a subsequent malpractice suit, we decline to apply that doctrine in the present case. The judgment against Rantz is not final, and thus has no preclusive effect. Accordingly, we discharge our rule to show cause and uphold the district court's denial of Kaufman and Levinson's motion to dismiss.